UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FORTESA QORROLLI,

                                    Plaintiff,

       -against-

METROPOLITAN DENTAL ASSOCIATES,
D.D.S - 225 BROADWAY, P.C.,
METROPOLITAN DENTAL ASSOCIATES,
D.D.S., P.C.,
MARIO ORANTES, individually, and
DR. PAUL I. COHEN, individually,

                                  Defendants.
------------------------------------------------------------------X

Civil Case No.:18-cv-6836

**COMPLAINT**

Plaintiffs Demand
A Trial By Jury

    Plaintiff, FORTESA QORROLLI (hereinafter referred to as "FORTESA" and/or "Plaintiff"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants, METROPOLITAN DENTAL ASSOCIATES, D.D.S - 225 BROADWAY, P.C. (hereinafter referred to as "MDA-225"), METROPOLITAN DENTAL ASSOCIATES, D.D.S., P.C. (hereinafter referred to as "MDA"), MARIO ORANTES (hereinafter referred to as "ORANTES"), individually, and DR. PAUL I. COHEN (hereinafter referred to as "COHEN"), individually (hereinafter collectively referred to as "Defendants"), upon information and belief, as follows:

### NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination,

sexual harassment, hostile work environment, retaliation, and wrongful termination by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. On or about July 28, 2016, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5. On or about May 1, 2018, Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions that give rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

8. Plaintiff is an individual female who is a resident of the State of New Jersey in the County of Bergen.

9. At all times material, Defendant METROPOLITAN DENTAL ASSOCIATES, D.D.S - 225 BROADWAY, P.C. is a domestic professional corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

10. At all times material Defendant METROPOLITAN DENTAL ASSOCIATES, D.D.S., P.C. is a domestic professional corporation duly existing by the virtue and laws of the State of New York that does business in the State of New York.

11. At all times material, Defendant MDA and Defendant MDA-225 were joint employers of Plaintiff.

12. At all times material, Defendant DR. PAUL I. COHEN was and is the Chief Executive Officer of Defendants MDA & MDA-225.

13. At all times material, COHEN had supervisory authority over Plaintiff with regard to her employment.

14. At all times material, Defendant ORANTES was the Office Manager for Defendants MDA & MDA-225.

15. At all times material, ORANTES had supervisory authority over Plaintiff with regard to her employment.

## FACTUAL ALLEGATIONS

16. In or around December 2009, Defendants hired Plaintiff as a dental hygienist.

17. At all times material, Plaintiff was an exemplary employee. Throughout the course of her employment with Defendants, Plaintiff's superiors would call her work, "outstanding," "productive," and "reliable."

18. At all times material, Plaintiff frequently worked with her supervisor, Defendants' employee MARIO.

19. On numerous occasions, MARIO made inappropriate and unwelcome sexual advances and comments towards Plaintiff.

20. In fact, MARIO exhibited a pattern and practice of sexual harassment, not only with Plaintiff, but with several other female employees of Defendants'.

21. MARIO frequently and intentionally created volatile working conditions meant to stress and emotionally destabilize Defendants' female employees, including Plaintiff.

22. MARIO would then attempt to comfort and console Defendants' female employees, including Plaintiff. While these women were vulnerable, MARIO would attempt to exert

his power and authority over Defendants' female employees. MARIO consistently used his power and influence to force Defendants' female employees to acquiesce to MARIO's sexual advances.

23. MARIO made it explicitly clear that if any of Defendants' female employees, including Plaintiff, refused MARIO'S sexual advances, he would become irate and retaliate against them.

24. MARIO frequently stated to Plaintiff, "women are so easy to manipulate," as well as, "women need someone to fear with authority in their life."

25. Defendants discriminated against Plaintiff on the basis of her sex/gender.

26. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

27. For instance, if a female employee of Defendants' refused MARIO'S sexual advances, MARIO would cut their hours, send them home early, and threaten their jobs.

28. To the contrary, Defendants' female employees that succumbed to MARIO'S unsolicited sexual advances were given preferential treatment. Preferential treatment included the ability to leave MDA-225 and enter MDA-225 during work hours at their personal convenience, with no regards to adjusting their time sheets according to the actual hours they worked.

29. If a female employee of Defendants' acquiesced to MARIO'S sexual advances, MARIO rewarded them with additional compensation and even free dental work.

30. In fact, MARIO was forcing numerous female employees of Defendants' to engage in sexual conduct with him. MARIO forced these women to engage in sexual conduct in vacant examination rooms at MDA-225, as well as during work hours at the Cosmopolitan Hotel Tribeca, located at 95 West Broadway, New York, New York 10007.

31. With the help of another female employee of Defendants', MARIO arranged for several

female employees to meet him in various examination rooms at MDA-225 to perform unwelcome oral sex and engage in sexual intercourse.

32. MARIO required these female employees to power off their cell phones to make sure that they were not recording MARIO while he sexually assaulted them.

33. In or around January 2015, Plaintiff approached DR. COHEN and complained about the pattern and practice of sexual harassment exhibited by MARIO.

34. Specifically, Plaintiff informed DR. COHEN that MARIO began blaming everything on Plaintiff as a result of her resisting MARIO'S sexual advances. Plaintiff indicated that she would not give in and "throw herself" on MARIO like so many other female employees of Defendants'. Additionally, Plaintiff stated, "all the other women are afraid of losing their jobs if they say no to [MARIO]. So they do whatever he asks for so he leaves them in peace." DR. COHEN replied, "Tessa, cut the crap, because if you gave a shit things would change around here for once."

35. Plaintiff was stunned that DR. COHEN refused to take any action to remedy the severe and pervasive nature of MARIO'S unrelenting sexual harassment.

36. In response to Plaintiff's complaint, MARIO'S escalated and intensified the manner in which he harassed Plaintiff.

37. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

38. For instance, in or around February 2015, Plaintiff was visibly upset after a dispute with DR. COHEN regarding Plaintiff and her mother not receiving proper overtime pay. MARIO followed Plaintiff into an examination room, closed and locked the door and stated, "Don't worry, it will be okay. I like you, I think you are a beautiful girl and have so much potential. I have nothing against you." MARIO then attempted to hug and kiss Plaintiff. Plaintiff moved away from MARIO and refused MARIO'S sexual advance.

39. MARIO immediately became irate and stormed out of the room. As a result, in an effort to retaliate against Plaintiff and subject her to an adverse employment action, MARIO informed DR. COHEN that Plaintiff was not performing well.

40. Specifically, MARIO began a tirade of slanderous attacks on Plaintiff's work ethic and informed DR. COHEN, "we should throw her the fuck out, she's useless around here."

41. As a result of the hostile work environment, continuous sexual harassment, and threats from MARIO, Plaintiff began to develop severe depression and anxiety.

42. Shortly thereafter, in or around February 2015, MARIO continued to sexually harass Plaintiff. MARIO made several unwelcome sexual remarks about Plaintiff's legs, arms, and buttocks, pretending to touch each part of Plaintiff's body to see if they were "firm enough" for him to have sex with Plaintiff. MARIO's bizarre attempt to determine if Plaintiff was fit enough to have sex with him, concluded with MARIO asking Plaintiff about her ability to perform squats.

43. In fact, MARIO stated to Plaintiff, "you should work out your brain as much as you work out your ass with those squats at the gym and you'll be better off in life, and maybe get things done right for a change."

44. Plaintiff was shocked and appalled at the unwelcome and vulgar sexual comments from her supervisor, MARIO.

45. Defendants discriminated against Plaintiff on the basis of her sex/gender.

46. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

47. Throughout the course of Plaintiff's employment with Defendants, Plaintiff communicated to MARIO that he was crossing a professional boundary by initiating these unwelcome sexual advances. As a result, on numerous occasions MARIO became infuriated and verbally attacked Plaintiff.

48. In fact, MARIO repeatedly threatened Plaintiff, sharply telling Plaintiff that she did not work hard enough and indicated that Plaintiff would face termination if she continued to reject his sexual advances. Furthermore, MARIO indicated to Plaintiff that if she gave in to MARIO's sexual advances, then MARIO would cease to verbally harass Plaintiff.

49. Plaintiff continued to reject MARIO's sexual advances.

50. Every time that Plaintiff declined MARIO's sexual advances, MARIO's vicious cycle of retaliation, slander, and threats of termination would continue. On numerous occasions, MARIO stormed off to find DR. COHEN, and tell DR. COHEN that Plaintiff was not working hard enough and should be terminated.

51. In fact, when Plaintiff rejected MARIO, MARIO would accuse Plaintiff's mother of being the reason Plaintiff did not acquiesce to his demands, exclaiming that Plaintiff's mother protected Plaintiff from him. MARIO frequently called Plaintiff's mother, also MARIO's subordinate employee, "Hitler."

52. MARIO called Plaintiff's mother "Hitler" in retaliation for Plaintiff's mother's attempts to protect her daughter and impede MARIO's contemptible desire to force Plaintiff into horrific and systematic sexual assaults.

53. After such volatile interactions, Plaintiff's mother would exit the room visually and emotionally distraught at the idea that her daughter could have been a victim to MARIO's deplorable sexual advances.

54. As a result of such interactions, Plaintiff's mother suffers from severe symptoms of depression and anxiety.

55. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

56. On numerous occasions, in or around March 2015, MARIO attempted to corner Plaintiff in vacant examination rooms to sexually harass and assault Plaintiff. Plaintiff's mother

frequently entered the room, preventing MARIO from isolating and preying on Plaintiff.

57. Moreover, on numerous occasions in 2015, Plaintiff met with DR. COHEN and complained about the chronic sexual harassment, sex/gender discrimination, and hostile work environment of which Defendants subjected her.

58. Plaintiff informed DR. COHEN, "I do not want to be put in situations where I have to be sexually involved in order not to get abused and get away with not working like other hygienists."

59. DR. COHEN never acknowledged Plaintiff's complaints.

60. DR. COHEN did not take any steps to remedy Plaintiff's complaint or initiate an internal investigation of any kind.

61. DR. COHEN failed to take any corrective action in response to MARIO's pattern and practice of forcing Defendants' female employees to have unwelcome sexual intercourse and/or oral sex to maintain their job status.

62. Defendants knowingly permitted MARIO to subject the female employees to sex/gender discrimination, sexual harassment, sexual assaults, and subsequent retaliation.

63. DR. COHEN continued to neglect Plaintiff's complaints and knowingly jeopardized his entire female staff's well-being by continuing to employ MARIO.

64. Defendants knowingly subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

65. On numerous occasions, while MARIO was subjecting Defendants' female employees to unwanted sexual assaults, MARIO failed to schedule additional coverage to ensure patients were attended to.

66. The lack of available staff members would yield significantly prolonged wait times for patients, and in turn the patients would complain of such wait times to MARIO.

67. In retaliation for Plaintiff's repeated denials of MARIO's sexual advances, MARIO called

Plaintiff and screamed at her, and placed a

68. ll criticism from patients on Plaintiff. MARIO instructed Plaintiff that the extensive wait times were her fault because she did not see patients fast enough, nor did she address their concerns in a timely manner.

69. In or around July 2015, MARIO told Plaintiff, "you are a weak woman," "don't be so vulnerable and insecure, as a woman I expect more from you."

70. Defendants discriminated against Plaintiff on the basis of her sex/gender.

71. Defendants subjected Plaintiff to a hostile work environment on the basis of her sex/gender.

72. In fact, MARIO'S behavior became so severe and pervasive that another female employee of Defendants', JANE DOE, (whose name is being withheld at this time and hereinafter referred to as "DOE"), reached a breaking point. On or about October 12, 2015, DOE faxed a letter to Defendants' office addressed to DR. COHEN.

73. The letter detailed specific instances of sexual harassment committed by MARIO, and reads, "For one, your company manager Mario Orantes has been using his power and influence to sexually harass the YOUNG female employees here." As well as, "If these women say 'NO' he finds ways to cut their hours, send them home, and threaten their jobs."

74. Despite Defendants and DR. COHEN receiving this letter, Defendants failed to take any remedial action to prevent MARIO from continuing to sexually harass Defendants' female employees.

75. Defendants' complete disregard for employee safety was intentional and malicious.

76. In or around March 2016, MARIO continued to sexually harass Plaintiff along with other female employees of Defendants'.

77. On or about March 30, 2016, Plaintiff could no longer endure the continuing harassment

and complained to DR. COHEN.

78. Once again, Defendants failed to take any steps to remedy Plaintiff's complaint of sexual harassment, sex/gender discrimination and retaliation. As a result, Defendants knowingly subjected Plaintiff to continued sexual harassment and retaliation at the hands of MARIO.

79. As a result, Defendants constructively discharged Plaintiff on or about May 21, 2016.

80. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

81. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

82. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

83. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

84. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER
TITLE VII
(AGAINST DEFENDANTS MDA-225 and MDA)**

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

87. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of her sex/gender, together with subjecting Plaintiff to sexual harassment, and causing a hostile work environment based on the same.

88. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

89. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER
## TITLE VII
## (AGAINST DEFENDANTS MDA-225 and MDA)

90. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

92. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.,* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of

Defendants.

93. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### NEW YORK STATE LAW

94. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

95. New York State Executive Law § 296 provides that,

"1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

96. Defendants violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her sex/gender together with subjecting Plaintiff to sexual harassment, and causing a hostile work environment based on the same.

97. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

98. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FOURTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### NEW YORK STATE LAW

99. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

100. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article".

101. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to the unlawful employment practices of Defendants.

102. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION
UNDER NEW YORK STATE LAW
AIDING AND ABETTING**

103.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104.    New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

105.    Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

106. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

107.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

108.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an

unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

109. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's sex/gender together with subjecting Plaintiff to sexual harassment, and causing a hostile work environment based on the same.

110. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

111. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS AN SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

112. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

113. The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

114. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating and retaliating against

the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of his employer.

115. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

116. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

117. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

118. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

119. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE**

120. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

121. Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

122. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

123. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

124. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

125. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION
## UNDER NEW YORK STATE LAW
## NEGLIGENCE

126. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

127. At all times material, Defendants MDA-225 and MDA were negligent in the hiring, firing, retention and supervision of the subject harasser, Defendant MARIO ORANTES.

128. Defendants owed Plaintiff a duty to provide Plaintiff with a reasonably safe environment.

129. Defendants breached their duties to Plaintiff and as a result Plaintiff was damaged in an amount to be determined at the time of trial.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: July 30, 2018
New York, New York

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

/s/Zachary Holzberg_____
Zack Holzberg, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
212-587-0760

TO: METROPOLITAN DENTAL ASSOCIATES, D.D.S - 225 BROADWAY, P.C., and METROPOLITAN DENTAL ASSOCIATES, D.D.S., P.C.
David C. Wims, Esq.
*Attorney for Defendants*
1430 Pitkin Ave., 2nd Floor
Brooklyn, New York 11233

MARIO ORANTES
60 Riverside Blvd., APT 921
New York, New York 10069

DR. PAUL I. COHEN
155 E. 38th St., APT 7G
New York, New York 10016