**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------**X**          CIVIL ACTION NO. 18 CV 6836
FORTESSA QORROLLI,                                              (DLC)(OTW)

                                                        **DEFENDANTS'**
                                                        **MEMORANDUM**
                                      Plaintiff,        **OF LAW IN SUPPORT**

                    -against-

METROPOLITAN DENTAL ASSOCIATES, D.D.S. – 225
BROADWAY, P.C.,
METROPOLITAN DENTAL ASSOCIATES, D.D.S., P.C.,
MARIO ORANTES, individually, and
DR. PAUL I. COHEN, individually,


                                      Defendants.
------------------------------------------------------**X**



**LAW OFFICE OF DAVID WIMS**
**David C. Wims, Esq.**
*Attorneys for Defendants*
**1430 Pitkin Avenue, 2nd Floor**
**Brooklyn, New York 11233**
**(646) 393-9550**
**Fax (646) 393-9552**
**dwims@wimslaw.com**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT                                                3

PROCEDURAL POSTURE                                                  4

LEGAL STANDARDS                                                       5

ARGUMENT                                                             6

    A.  THE JURY'S VERDICT IS AGAINST THE WEIGHT OF THE TRIAL EVIDENCE
                  6

    B.  THE EMOTIONAL DISTRESS AWARD IS AGAINST THE WEIGHT OF THE
       EVIDENCE AND PRECEDENT AND MUST NOT BE ALLOWED TO STAND
                  8

    C.  THE PUNITIVE DAMAGES AWARD IS AGAINST THE WEIGHT OF THE
       EVIDENCE AND PRECEDENT AND MUST NOT BE ALLOWED TO STAND
                  14

    D.  THE TRIAL INCLUDED TOO MANY ERRORS AND IRREGULARITIES TO
       STAND
                  18

CONCLUSION                                                          20

## PRELIMINARY STATEMENT

This matter is before this Court on Defendants' post-trial motion for judgment as a matter of law, for a new trial and/or for a remittitur of the jury's verdict pursuant to Fed. R. Civ. P. 50(b) and 59(a), (b) and (e). In support of this application, Defendants submit a *Notice of Motion*, counsel's *Declaration* and this *Memorandum of Law*. On October 27, 2022, the jury in this matter returned a verdict against Defendants without a scintilla of credible and admissible evidence. For the following reasons set forth herein, Defendants' motion should be granted in its entirety.

The trial of this matter was plagued by multiple irreversible and highly prejudicial events which resulted in an irregular and unfair verdict not supported by evidence but based upon sympathy and emotion. The Plaintiff's testimony and case were devoid of any credible facts, fully relied on the jury hearing inadmissible hearsay and innuendo, and included innumerable emotional outbursts by the Plaintiff and her mother to garner sympathy. It also included a testimonial record exchange before the jury where the Plaintiff first waived her attorney-client privilege in order to bolster a material fact only to be completely contradicted by both her attorneys when directly questioned by the Court in its effort to mitigate a non-disclosed and bizarre interchange. Plaintiff's attorneys' contradiction of their client's testimony, standing alone, clearly evidences Plaintiff's lack of credibility, sworn dishonesty before this Court and further supports a history of her repeated factual uncertainties and changes. The Court agreed at trial and indicated:

> OK, I don't want to overstate it but this is horrifying. First of all, giving such advice, you know, could, in some parties' views, constitute malpractice. The plaintiff is, of course, to not elicit at any point during this trial that plaintiff's trial counsel represented plaintiff at the time that letter was written. The core of this case should be, but hasn't been, what Mr. Orantes did or didn't do to sexually harass the plaintiff. Much of the evidence offered by the plaintiff, to date, has concerned hearsay statements by others about their own reported

3

experience with Mr. Orantes, a fax letter which was unsigned, again concerning claims that had nothing to do with the plaintiff, and then we end yesterday towards the end of the day with this conversation coming out of nowhere in which she seeks to anticipate one of the principal problems with her claim which is the failure, in the letter she provided Dr. Cohen, to talk explicitly about any sexual harassment by Mr. Orantes. And as I have just heard here, there was no notice to the defendant that there would be a waiver of the attorney-client privilege or that such conversation existed between plaintiffs and counsel if assuming it did exist.

Trial Transcript ("Tr. Tx.") at 126:12-25 – 127:1-7.

I am very concerned about the integrity of this trial.  End of story. And I could go on and on but let us just put that aside for the moment. I want to give plaintiff's counsel an opportunity to be heard, I want to give defendant's counsel an opportunity to be heard, but it is my intention to strike that testimony and give curative instruction to the jury. I will hear argument from counsel later when we have time alone as to whether or not this is going to be sufficient, along with all the hearsay that's come in, and whether my curative and limiting instructions with respect to all that hearsay are cumulatively sufficient to capture and correct the misuse of evidence so that the jury can focus on the central issue they have to decide: Whether Mr. Orantes sexually harassed the plaintiff. That's what this case is supposed to be about.

Tr. Tx. at 128:2-15.

## PROCEDURAL POSTURE

Plaintiff Fortesa Qorrolli is a dental hygienist and brought employment discrimination claims against her former employer and two of her supervisors. See Docket #1.  She asserts that the Defendants subjected her to sex discrimination and a hostile work environment and retaliated against her by forcing her resignation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.* Id.[1]

---

[1] Following the close of discovery, the Defendants filed a motion for summary judgment on all claims pursuant to Fed. R. Civ. P.  56. See Docket ## 50-53.  On December 22, 2021, the Court dismissed on summary judgment Plaintiff's retaliation claims under federal, state and city law. See Docket # 64.

This case was tried before a jury and the Honorable Denise L. Cote beginning October 24, 2022 through October 27, 2022. See October 24, 2022 through October 27, 2022 Minute Entries.  On October 26, 2022, the jury returned a verdict on liability for Plaintiff and awarded Plaintiff $575,000.00 in compensatory damages for emotional distress. Tr. Tx. at 160:9-25 – 161:1-7.  Then, on October 27, 2022, the jury awarded Plaintiff $2,000,000.00 in punitive damages. Tr. Tx. at 453:5-9.

Defendants now bring the instant motion because Plaintiff failed to meet its burden of proof on liability; Plaintiff failed to prove entitlement to compensatory damages commensurate with the jury's award; Plaintiff failed to prove its entitlement to any punitive damages, much less the amount the jury awarded; and the excessive award of both compensatory and punitive damages denied Defendants due process.

## LEGAL STANDARDS

After entry of judgment, a "movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).  Rule 50 "does not define how specific" the initial motion for judgment as a matter of law must be, so long as the non-moving party is given "an opportunity to cure the defects in proof that might otherwise preclude [it] from taking the case to the jury." *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 286-87 (2d Cir. 1998) (internal quotation marks and citations omitted).  Here, Defendants made their previous motion for a directed verdict in open court on the record at trial at the close of Plaintiff's case in chief.[2] See 10/25/2022 Tr. Tx. at 212.

---

[2] Motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) were formerly known as motions for a directed verdict, and renewed motions for judgment as a matter of law were formerly known as motions for judgment notwithstanding the verdict. The name change was solely technical, so case law referring to either name remains valid under the Fed. R. Civ. P.

In ruling on the motion, the court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Id. "The Court's task in evaluating a Rule 50 motion is to look at the trial evidence and assess whether that evidence was sufficient to support the verdict." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 546 (S.D.N.Y. 2011).

"A new trial is appropriate when the verdict is against the clear weight of the evidence, that is, if the verdict is seriously erroneous or a miscarriage of justice." *Pierce v. City of N.Y.*, 293 F. Supp. 3d 306, 312 (E.D.N.Y. 2017) (citing *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634 (2d Cir. 2002)). "In contrast with a motion for judgment as a matter of law, a court considering a motion for a new trial based on the weight of the evidence is permitted to assess the evidence and the witnesses' credibility independently, without viewing them in either party's favor." Id. (citing *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012)).

In addition, "[a] new trial may be warranted if the district court made substantial errors in admitting or excluding evidence, provided that the errors caused the jury to reach a seriously erroneous result or its verdict is a miscarriage of justice." *Graham v. City of N.Y.*, 128 F. Supp. 3d 681, 704-05 (E.D.N.Y. 2005); see also *Arlio v. Lively*, 474 F.3d 46, 52-53 (2d Cir. 2007) (vacating judgment and remanding for new trial due to "irrelevant and prejudicial testimony").

## **ARGUMENT**

### A. **THE JURY'S VERDICT IS AGAINST THE WEIGHT OF THE TRIAL EVIDENCE**

*1. Evidence*

The Plaintiff testified at trial that there were only two (2) incidents of physical contact between her and Mr. Orantes – touching with no explicit sexual overtures made. Tr. Tx. at 161:17-25, 162:1-25; 165:17-19; 182:15-22; 183:13-17.  Plaintiff's case was solely dependent on

inadmissible hearsay and innuendo repeatedly heard by the jury regarding the alleged, unsubstantiated sexual escapades of Mr. Orantes and several of Plaintiff's female, former co-workers. Tr. Tx. at 451:2-12.  However, Plaintiff admitted that she did not actually have any first-hand knowledge of what Mr. Orantes allegedly did with others because she did not hear or see it. Id. at 166:13-25; 171:3-10; 173:6-11; 178:16-25.  Plaintiff failed to take all reasonable legal steps to secure testimony from these alleged witnesses.

In addition, Plaintiff testified that she experienced sexual harassment every day and all the time, but could not identify a single incident within the statutory limitations period.[3]  She also testified that she was subjected to harsh discipline by Mr. Orantes regarding her work performance, which she alleged was somehow evidence of sexual harassment. Tr. Tx. at 160:9-25 – 161:1-7; 205:7-17.  On multiple occasions, Plaintiff cried during her testimony with tissues in front of her, which clearly appealed to the jury's sympathy but has no evidentiary value. Tr. Tx. at 261:16-22. The same is true of Plaintiff's mother, when she testified on her daughter's behalf.

## 2. *Applicable Standards*

"To establish a hostile work environment claim. . . a plaintiff must show that the `workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo v. Carlone,* 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations and quotation marks omitted)).

---

[3] Plaintiff filed the Charge with the EEOC on July 28, 2016. See Complaint ¶4.  Thus, only alleged misconduct occurring on or after September 28, 2015 would fall within the 300-day limitations period. See *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 307-08 (E.D.N.Y. 2012)

*3. Discussion*

The evidence adduced at trial by Plaintiff fell woefully short of meeting this standard. Plaintiff's case in chief consisted of only one first-hand witness and one exhibit.  Plaintiff failed to set forth credible testimony regarding the details of any alleged incidents of sexual harassment within the time period covered by this lawsuit. Tr. Tx. at 160:9-25 – 161:1-7.  Requiring Plaintiff to meet its burden of proof guarantees Defendants due process and is consistent with fundamental notions of fair play and justice.

Plaintiff did not establish that any alleged harassment was severe and pervasive, nor the number of times it allegedly occurred.  Two alleged incidents of non-sexual touching are not "extraordinarily severe," and the alleged incidents were episodic rather than pervasive.  The jury's verdict is seriously erroneous and constitutes a miscarriage of justice.  As explained below, both awards are excessive and disproportionate to the proofs adduced at trial and contrary to case law in the precedent.

Based on the above, Plaintiff failed to prove that she was subjected to hostile environment sexual harassment by Defendants, much less that she was entitled to $575,000.00 in compensatory damages and $2,000,000.00 in punitive damages.  The trial evidence was insufficient to support the jury's verdict on both liability and damages, and is in fact contrary thereto.

**B.  THE EMOTIONAL DISTRESS AWARD IS AGAINST THE WEIGHT OF THE EVIDENCE AND PRECEDENT AND MUST NOT BE ALLOWED TO STAND**

Here, the jury awarded Plaintiff $575,000.00 in compensatory damages. Tr. Tx. at 420:2-4. Plaintiff offered no medical expert testimony on her emotional distress and no medical records were admitted into evidence. Tr. Tx. at 215:14-24.  First, Plaintiff did not prove emotional distress in any amount.  She claimed that she suffered from a number of maladies, including but

not limited to anxiety, depression and post-traumatic syndrome disorder, but yet there was no testimony and/or medical record from her or anyone on causation. Id.  For these reasons, the compensatory damages award was against the weight of the evidence.

Further, given the lack of expert testimony and medical records, Plaintiff's entitlement to emotional distress, if liability were even proven, should be categorized as 'garden variety'.  In the 2nd Circuit, judges use a matrix to assess the propriety of emotional distress or pain and suffering awards in employment discrimination cases.  "[N]on-economic damages can fall into one of three categories - garden-variety, significant, or egregious." *Lewis v. Am. Sugar Ref., Inc.,* 325 F.Supp.3d 321, 364 (S.D.N.Y. 2018). "Awards compensating garden-variety emotional distress or mental anguish in the Second Circuit range from $30,000 to $125,000." Id. (collecting cases); see *United Health Programs of Am., Inc.,* 2020 U.S. Dist. LEXIS 39587, at *45; *MacCluskey v. Univ. of Conn. Health Ctr.,* No. 3:13-cv-1408 (MPS), 2017 U.S. Dist. LEXIS 23520, *48-*49 (D. Conn. Feb. 21, 2017).

For perspective, courts in this district have recently found awards of $40,000 or $50,000 to be appropriate for garden variety emotional distress claims resulting from a hostile work environment where the plaintiff's emotional distress did not require medical treatment or result in physical manifestation. See *White v. New York State Office of Children & Family Servs.,* No. 5:11-CV-309 (FJS/ATB), 2021 U.S. Dist. LEXIS 16061, *14 (N.D.N.Y. Jan. 28, 2021) (Scullin, S.J.) (denying new trial on condition that the plaintiff accepts $50,000 remittitur on hostile work environment claim); *Dotson v. City of Syracuse,* No. 5:04-CV-1388 (NAM/GJD), 2011 U.S. Dist. LEXIS 20374, *61 (N.D.N.Y. Mar. 2, 2011) (Mordue,

C.J.) (same); *Negron v. Ulster Cty.,* No. 1:08-CV-692 (FJS/RFT), 2012 U.S. Dist. LEXIS

117142, *23 (N.D.N.Y. Aug. 20, 2012) (Scullin, S.J.) (finding $40,000 remittitur appropriate to

compensate Plaintiff's Title VII hostile work environment claim).

    In *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 Fed. Appx. 536 (2nd Cir. 2020), which

was a Title VII hostile work environment case based on race and national origin, the court

reviewed the jury verdict in favor of Plaintiff for $2,160,000 in emotional distress damages. Id.

at *18.  Therein, the court noted that "we are bound by precedent to compare the awards in this

case with the awards in analogous cases." Id.   Based on the relevant factors, the court reduced

the jury's compensatory damages award to $250,000.00. In support thereof, it stated in relevant

part:

> Although Sooroojballie urges the Court to uphold the jury verdict because the emotional
> distress supports an award in the "egregious" category, we find that argument
> unpersuasive. In particular, Sooroojballie did not provide evidence of lasting
> psychological effects from the hostile work environment, and had no further contact with
> his internist (who was treating his mental health issues) after he began his new job with
> the City of New York on October 27, 2014. **6⚖** *See Menghi v. Hart*, 745 F. Supp. 2d 89,
> 107 (E.D.N.Y. 2010) ("Awards at the high end of the spectrum may be warranted in cases
> that generally contain [**23] evidence of debilitating and permanent alterations in
> lifestyle." (quotation marks omitted)), *aff'd*, 478 F. App'x 716 (2d Cir. 2012). In short,
> Sooroojballie's evidence falls far short of the type of shocking, prolonged discriminatory
> conduct and/or long-term emotional harm that are part and parcel of the larger damage
> awards that can be sustained for egregious cases. *See, e.g., Turley*, 774 F.3d at 146,
> 163 (upholding an award of $1.32 million **[*548]** when the plaintiff was subjected to
> "an extraordinary and steadily intensifying drumbeat of racial insults, intimidation, and
> degradation over a period of more than three years," resulting in post-traumatic stress
> disorder, short-term adjustment disorder, depression, a panic disorder, and multiple
> hospitalizations). Here, Sooroojballie's proof regarding emotional distress did not contain
> the evidence of prolonged mental harm or negative, long-term prognosis that is typically
> present in cases with awards around $500,000. *See, e.g., Ramirez v. New York City Off—
> Track Betting Corp.*, 112 F.3d 38, 40, 41 n.1 (2d Cir. 1997) (upholding district court's
> decision to reduce $1.14 million pain and suffering award to $500,000 in Title VII case
> where evidence demonstrated that the plaintiff was unable to work and [**24] was
> "rendered permanently non-functional"); *Ravina v. Columbia Univ.*, No. 16-CV-2137
> (RA), 2019 U.S. Dist. LEXIS 56556, 2019 WL 1450449, at *12 (S.D.N.Y. Mar. 31,
> 2019) (granting motion for remittitur and reducing award from $750,000 to $500,000 in
> a retaliation case where the plaintiff suffered significant emotional distress; the plaintiff

testified about her "insomnia, a herniated disc, anxiety, weight gain, and suicidal thoughts" and her psychiatrist testified that the plaintiff's "prognosis was 'poor'"); *Komlosi v. Fudenberg*, No. 88 CIV. 1792 HBP, 2000 U.S. Dist. LEXIS 4237, 2000 WL 351414, at *17 (S.D.N.Y. Mar. 31, 2000) (awarding the plaintiff $500,000 for non-economic loss where psychological injury "destroyed [the plaintiff's] ability to practice his profession"), *aff'd*, No. 01-89(XAP), 2002 U.S. App. LEXIS 13310, 2002 WL 34244996 (2d Cir. May 13, 2002); *see also Watson v. E.S. Sutton, Inc.*, No. 02 CIV. 2739 (KMW), 2005 U.S. Dist. LEXIS 31578, 2005 WL 2170659, at *15 (S.D.N.Y. Sept. 6, 2005) (finding that $500,000 emotional distress damages was excessive, and noting that "[the plaintiff] has not pointed us to any comparable cases—that is, cases with no permanent psychological damage or disability resulting from the harassment—with awards so high as the one the jury here gave her"), *aff'd*, 225 F. App'x 3 (2d Cir. 2006).

816 Fed. Appx. 536 at *22-24.

Another precedent that is on point is *Villalta v. JS Barkats, P.L.L.C.*, 2021 U.S. Dist. LEXIS 75071 (S.D.N.Y. 2021). There, Plaintiff filed a lawsuit seeking recourse for egregious acts of *quid quo pro* sexual harassment and hostile work environment under Title VII, the NYSHRL and the NYCHRL. Id. at *1. The acts included several sexual assaults, or rapes. Id. at *29. The Plaintiff prevailed on her sexual harassment claims and the Court awarded $350,000.00 in compensatory damages and $700,000.00 in punitive damages. Id. at *36-54.

The court found Defendants' conduct and Plaintiff's emotional distress to be egregious based on the evidence adduced at trial. The court in *Villalta* noted that "Villalta did not submit a diagnosis or opinion from a mental health professional of any severe chronic condition, such as post-traumatic stress syndrome ("PTSD").", just as in the instant case. Id. at *41-42.

With respect to Plaintiff's emotional distress, the Court noted:

Indeed, cases with relatively similar combinations of egregious conduct, harm inflicted, and level of corroboration have yielded emotional distress awards of far more modest amounts. See, e.g., *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 78-79, 99-100 (E.D.N.Y. 2020) (finding that emotional distress award of $200,000 "strikes a proper balance between the traumatic abuse plaintiff suffered and the near-complete absence of corroborating evidence" where defendant employer, who defaulted, made repeated sexual advances, coerced plaintiff into having sex, withheld pay in retaliation for plaintiff's request to maintain professional relationship, and ultimately threw plaintiff against a wall, choked her, and told her never to come back); *Garcia*, 2019 U.S. Dist. LEXIS 203447, 2019 WL 8274296 at *8 (awarding $175,000 in emotional distress damages to plaintiff

who "suffered physical violence, harassment, and discrimination for more than a year, leading to psychological treatment" including therapy and medication for diagnoses of PTSD and major depressive disorder), *R. & R. adopted*, 2020 U.S. Dist. LEXIS 50791, 2020 WL 1435002 (S.D.N.Y. March 24, 2020); *Gutierrez*, 2018 U.S. Dist. LEXIS 106808, 2018 WL 3432786 at *9-10 (recommending $130,000 emotional distress award where plaintiff endured severe and intense sexually harassing behavior that caused her migraine headaches, nausea, vomiting, sleep disorders, and anxiety lasting for **[*43]** over eighteen months); *Mayo-Coleman v. American Sugar Holdings, Inc.*, No. 14-CV-79, 2018 U.S. Dist. LEXIS 94821, 2018 WL 2684100, at *3, *5 (S.D.N.Y. June 5, 2018) (reducing emotional distress award from $1.7 million to $500,000 as "the greatest amount that can be awarded without being excessive" where plaintiff had both psychological and physical manifestations resulting from extreme sexual harassment).

In another recent case, *Angulo v. 36th Street Hospitality LLC*, No. 19-CV-5075, 2020 U.S. Dist. LEXIS 137816, 2020 WL 4938188, at *2-5 (S.D.N.Y. July 31, 2020), *R. & R. adopted*, 2020 U.S. Dist. LEXIS 153278, 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020), the girlfriend of a restaurant owner encouraged their family's babysitter - the plaintiff - to apply for a job as waitress, which she did. Several months into her employment, the plaintiff attempted suicide as the result of trying to cope with an earlier sexual assault that did not involve her employer. After being hospitalized, the plaintiff returned to work at the restaurant. Several months later, while babysitting the owner's daughter, the owner plied her with alcohol, forced her to have oral sex, raped her, and sexually harassed her for the ensuing three weeks while she continued to work at the restaurant. The plaintiff then attempted suicide two more times, quit her job, and attended in-patient and out-patient treatment programs and therapy over the next two years. She later regularly saw a psychiatrist and was treated and took medication for PTSD, binge eating **[*44]** disorder, bipolar disorder, and borderline personality disorder. When the plaintiff brought an action for sexual discrimination, the restaurant owner never appeared, resulting in a default judgment. As of the inquest, the plaintiff continued to experience panic attacks, distrust of others, and self-cutting, and she remained under the care of and regular treatment by a psychiatrist and therapist.

The Court sets forth the facts of *Angulo* in some detail because the court in that case declined to award the $750,000 in emotional harm damages requested by the plaintiff and instead awarded $300,000. 2020 U.S. Dist. LEXIS 137816, 2020 WL 4938188 at *13-14. In doing so, the court reviewed "other cases in which the plaintiff suffered a sexual assault" and found they "reflect[ed] a trend of awarding emotional distress damages 'in the low-to-mid hundreds of thousands of dollars.'" *Id.* at *13 (quoting *Offei v. Omar*, No. 11-CV-4283, 2012 U.S. Dist. LEXIS 80171, 2012 WL 2086294, at *5 (S.D.N.Y. May 18, 2012) (collecting cases awarding emotional distress damages of $100,000 to $500,000)). That is notable, because the facts in *Angulo* include several corroborating indicia of deep, debilitating, and lasting emotional harm not present in the instant case.

*Villalta v. JS Barkats, P.L.L.C.*, 2021 U.S. Dist. LEXIS 75071 at *42.

Upon considering the lack of medical records, medical expert testimony on causation, and corroboration, this Court must find that the jury's $575,000.00 verdict for Plaintiff's emotional distress was both excessive and shocks the judicial conscience, especially when considering that other Plaintiffs in this circuit have been awarded substantially less after having been **sexually assaulted**, inter alia. Id.  Consistent with precedent, Plaintiff failed to introduce credible, or any, evidence of debilitating and permanent alterations in her lifestyle or work ability, nor of prolonged mental harm or negative, long-term prognosis.  The record reflects the contrary, that the Plaintiff was employed again after leaving the Defendants' employ, was married three years ago and had a baby one year ago. Tr. Tx. at 184:9-19; 185:1-23.

In a fundamentally analogous situation, this very Court took the action Defendants now request.  In *Sharkey v. JP Morgan Chase*, 2018 U.S. Dist. LEXIS 35538, after a jury verdict for Plaintiff in the amount of $563,000.00 in emotional distress and an equal amount in back pay, and on Defendants' post-trial motion, the Court overturned the jury's verdict.  In so doing, the Court stated in relevant part:

> "[T]he size of a jury's verdict may be so excessive as to be 'inherently indicative of passion or prejudice' and to require a new trial," without remittitur. Id. (citing Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 603 (5th Cir. 1988)). "Influences such as caprice, passion, bias, and prejudice are antithetical to the rule of law. If there is a fixture of due process, it is that a verdict based on such influences cannot stand." TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 475-76, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993) (O'Connor, J., dissenting) (collecting cases).  Prejudice may be found to exist where the appropriate amount of the remittitur "is totally out of proportion to the damages" awarded by the jury. Ramirez, 112 F.3d at 41.

2018 U.S. Dist. LEXIS 35538 at *18.

Since the jury's award is contrary to the trial evidence and judicial precedent, the jury's verdict must be set aside, reduced; or in the alternative, a new trial must be ordered in the interest of justice.

**C.  THE PUNITIVE DAMAGES AWARD IS AGAINST THE WEIGHT OF THE
EVIDENCE AND PRECEDENT AND MUST NOT BE ALLOWED TO STAND**

*1.  Applicable Standards*

"'Punitive damages are a discretionary moral judgment that the defendant has engaged in

conduct that is so reprehensible that it warrants punishment.'" *Garcia*, 2019 U.S. Dist. LEXIS

203447, 2019 WL 8274296 at *8 (quoting *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 115 (2d

Cir. 2015)). The purpose of punitive damages is "'to punish the defendant and to deter him and

others from similar conduct in the future.'" *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir.

1996) (quoting *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992)).  Under Title VII, a

plaintiff may recover punitive damages if she demonstrates that the defendant "engaged in

a **[*48]** discriminatory practice or discriminatory practices with malice or with reckless

indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. §

1981a(b)(1).

"'The terms "malice" or "reckless indifference" pertain to the employer's knowledge that it

may be acting in violation of federal law, not its awareness that it is engaging in

discrimination.'" *Garcia*, 2019 U.S. Dist. LEXIS 203447, 2019 WL 8274296 at

*9 (quoting *Kolstad v. American Dental Association*, 527 U.S. 526, 535, 119 S. Ct. 2118, 2124,

144 L. Ed. 2d 494 (1999)).  "The employer's state of mind may be 'inferred from the

circumstances,' *Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-CV-1229, 2010 U.S. Dist. LEXIS

46036, 2010 WL 1930237, at *2 (E.D.N.Y. May 11, 2010), *aff'd*, 419 F. App'x 102 (2d Cir.

2011), and 'egregious or outrageous acts may serve as evidence supporting an inference' of the

employer's motive or intent[,] *Kolstad*, 527 U.S. at 538." Id.

"'[T]he standard for determining damages under the NYCHRL is whether the wrongdoer has

engaged in discrimination with willful or wanton negligence, or recklessness, or a "conscious

disregard of the rights of others or conduct so reckless as to amount to such

disregard."'" Id. (alteration in original) (quoting *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir.

2018)) (relying on certified question resolved in *Chauca v. Abraham*, 30 N.Y.3d 325, 334, 67

N.Y.S.3d 85, 91, 89 N.E.3d 475 (2017)). "'This standard requires "a lower degree of culpability"

than is required for punitive damages under other statutes, as it "requires neither a showing of

malice nor awareness of the violation of a protected right."'" Id. (quoting *Kreisler v. Humane*

*Society of New York*, No. 16-CV-8177, 2018 U.S. Dist. LEXIS 171147, 2018 WL 4778914, at *9

(S.D.N.Y. Oct. 3, 2018)). Moreover, "'[t]he NYCHRL permits punitive **[*49]** damages without

limitation on the maximum amount.'" *Ravina v. Columbia University and Geert Bekaert*, 2019

U.S. Dist. LEXIS 56556, 2019 WL 1450449 at *14 (quoting *Syrnik v. Polones Construction*

*Corp.*, 918 F. Supp. 2d 262, 265 (S.D.N.Y. 2013)). "'Punitive damages are intended not only to

punish the tortfeasor but also to deter future reprehensible conduct.'" Id. (quoting *Chauca*, 30

N.Y.3d at 331, 67 N.Y.S.3d at 89).

There is no formula or objective measure by which to arrive at a particular amount of

punitive damages. *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013). In reviewing an award of

punitive damages for excessiveness, however, courts consider "three guideposts" established by

the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589,

1598-99, 134 L. Ed. 2d 809 (1996): "(1) the degree of reprehensibility of the tortious conduct;

(2) the ratio of punitive damages to compensatory damages, and (3) the difference between this

remedy and the civil penalties authorized or imposed in comparable cases." *Lee*, 101 F.3d at

809 (citing *BMW of North America*, 517 U.S. at 575, 116 S. Ct. at 1598-99). Courts also review

the punitive damages awards in similar cases in order to gauge whether a particular punitive

award is excessive. *Payne*, 711 F.3d at 104; *Rosas v. Baiter Sales Co. Inc.*, No. 12-CV-6557,

2018 U.S. Dist. LEXIS 109332, 2018 WL 3199253, at *10 (S.D.N.Y. June 29, 2018) (citing *Lee*, 101 F. 3d at 812).

As Judge Abrams has explained, "the degree of reprehensibility ... 'is particularly important and useful because punitive damages are intended to punish, and the severity of punishment ... should vary with the degree of reprehensibility of the conduct.'" *Ravina*, 2019 U.S. Dist. LEXIS 56556, 2019 WL 1450449 at *14 (second omission in original) (brackets omitted) (quoting *Payne*, 711 F.3d at 100). "In assessing the reprehensibility of a defendant's **[*50]** conduct, the Supreme Court has instructed that courts should 'consider whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless disregard of the health and safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Thomas v. iStar Financial Inc.*, 652 F.3d 141, 148 (2d Cir. 2011) (brackets omitted) (quoting *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 1521, 155 L. Ed. 2d 585 (2003)).

The 2nd Circuit also spoke to punitive damages in *Sooroojballie*, supra, where the jury awarded Plaintiff $150,000.00 in punitive damages. 816 Fed. Appx. 536 at *25.  It indicated that three factors should be considered: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the  **[*549]**  difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id.  The instant Plaintiff adduced insufficient evidence of reprehensible conduct and the punitive damages award is nearly four times that of the compensatory damages award.  The U.S. Supreme Court

has indicated that a "[punitive damages] award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety"). *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003).

 *2. Discussion*

No aggravating factors were offered or proven in this matter.  Plaintiff alleged no physical harm whatsoever at trial.  Plaintiff did not produce evidence of indifference or recklessness to her safety or others.  The two alleged incidents cannot be characterized as repeated or consistent. The trial testimony fails to support an award of punitive damages at all – it does not even support a finding of liability.  The two alleged incidents of non-explicitly sexual touching and alleged, undated comments are not reprehensible, even if true.

There was no evidence of explicit groping, sexual assault or violence.  The subject, alleged incidents testified to by Plaintiff were not depraved nor particularly egregious or long-lasting. Notably, the Plaintiff's alleged harassment was completely contradicted by Defendant Mr. Orantes' testimony. Tr. Tx. at 255:6-20.  Plaintiff did not prove that any of her allegations were more likely true than not, especially in light of the substantial inconsistencies in her testimony.

In other words, the instant punitive damages award was unreasonable and disproportionate to the amount of alleged harm to the Plaintiff and to the general damages recovered.  As a result, the jury's punitive damages award herein is contrary to the evidence and precedent and must be overturned.  The instant jury's award of punitive damages is unconstitutionally excessive and denies Defendants due process.  The award is shocking to the conscience.

**D. <u>THE TRIAL INCLUDED TOO MANY ERRORS AND IRREGULARITIES TO STAND</u>**

*1. Plaintiff's Emotional Displays*

Defendants believe Plaintiff's repeated emotional outbursts infused the jury with emotion and sympathy.  Then, the proverbial fuse was lit by Plaintiff's counsel's words in his closing argument that Plaintiff suffered over 760 incidents of sexual harassment, which was unsupported by the evidence. Tr. Tx. at 347:22-25 – 348:1.  In fact, it is contrary to the trial evidence and therefore constitutes misconduct, by an experienced employment attorney who is familiar with the statute of limitations under Title VII.  Plaintiff counsel's closing remarks were highly prejudicial to Defendants and played to the passions of the jury and directly correlates to the jury's excessive and disproportionate awards.

*2. Hearsay and Inadmissible Evidence*

The jury was irreversibly poisoned by hearing an overabundance of hearsay and innuendo regarding Mr. Orantes' alleged and unproven sexual escapades at work.  This Court's many attempts to provide the jury with curative instructions regarding the hearsay and inadmissible evidence were insufficient to cure and direct the jury's attention to the actual issues and evidence in this case; confused the jury and may have even played to the jury's sympathy for Plaintiff's counsel.  It is evident that the jury fully considered that which the Judge instructed and prohibited them from relying on in deciding this case.  Justice requires a new trial, dismissal and/or a substantial remittitur.  Further, Defendants posit that even the order of witnesses confused the jury given that Defendants were subject to cross-examination prior to being subject to direct examination. Tr. Tx. at 254:14-19.

3. *Plaintiff's Credibility Issues*

Plaintiff lacks credibility given that she testified that Plaintiff's counsel told her not to include the term sexual harassment in her letter that she claims she gave to Defendant Dr. Cohen. Tr. Tx. at 180:3-8. Thereafter and outside the presence of the jury, this Court attempted to remedy this unnoticed waiver by eliciting responses from Plaintiff's two attorneys, wherein both of her attorneys stated on the record that they told her no such thing, so that either Plaintiff or her attorneys lied to the Court. Tr. Tx. at 129:1-11. This Court has the power and right to substitute its judgment on witness credibility on a motion for a new trial based on the weight of the evidence. See *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). This Court observed the Plaintiff repeatedly contradict her own deposition testimony and even her earlier trial testimony. Tr. Tx. at 166:24-25 – 167:1-5; 181:11-22; 183:3-17.

For example, Plaintiff testified at her deposition that she did not recall the first time she was allegedly harassed, nor when it occurred. Plaintiff's Deposition Transcript ("Dep. Tx.") at 62:5-12. She also said at her deposition that Mr. Orantes never touched her buttocks and then contradicted that at trial. Id. at 74:2-25; 75:1-18; 82:20-25 – 83:1-3; 102:14-23.

Finally, this Court opined and summarized some of the problems with this trial and Plaintiff's proofs thereat, stating:

> From the plaintiff's perspective there is a motion made at the end of the trial that I reserved on and I expect there will be motions made after the verdicts are rendered. I don't know if it is going to be a motion to set aside the verdict, a motion for a new trial with a remittitur. I have no idea the grounds that might be made but there are procedural opportunities yet for the defendants to challenge this, and among the issues that may be raised are something I have put on the record a couple of times already during the course of this trial.
>
> The plaintiffs chose to focus this trial principally on the hearsay, principally on the plaintiff's conversations with others, principally on Plaintiff's Exhibit 1 and not the two instances of physical contact that the plaintiff had with Mr. Orantes and so there is an issue of -- or I should say the two specific instances of physical contact with Mr. Orantes

that the plaintiff was able to describe to the jury. So, there may be an argument about whether a new trial should be granted that would reduce the amount of hearsay presented to the jury at a second trial and accompanied perhaps, by a remittitur amount of a far lower compensatory damages award.  That's, as I see it.

Tr. Tx. at 450:17-25 – 451:1-13.

Based upon the Court's comments, it is abundantly apparent that the instant trial record is too full of errors and irregularities and should not be permitted to stand.  The only way to remedy this is to order a new trial.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request in the alternative, that the Court enter judgment as a matter of law in favor of Defendants on liability, substantially reduce the jury's award of compensatory and punitive damages and/or order a new trial.  Fundamental notions of fair play and justice mandate the same.

Dated:  Brooklyn, New York

November 18, 2022

_____/s/_____
LAW OFFICE OF DAVID WIMS
David C. Wims, Esq. (DW-6964)
*Attorneys for Defendants*
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550

20