**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X   CIVIL ACTION NO. 18 CV 6836
FORTESSA QORROLLI,                                                              (DLC)(OTW)

**DEFENDANTS' REPLY**
**MEMORANDUM**
Plaintiff,   **OF LAW IN SUPPORT**

-against-

METROPOLITAN DENTAL ASSOCIATES, D.D.S. – 225
BROADWAY, P.C.,
METROPOLITAN DENTAL ASSOCIATES, D.D.S., P.C.,
MARIO ORANTES, individually, and
DR. PAUL I. COHEN, individually,

                                                                Defendants.
-------------------------------------------------------X

**LAW OFFICE OF DAVID WIMS**
**David C. Wims, Esq.**
*Attorneys for Defendants*
**1430 Pitkin Avenue, 2nd Floor**
**Brooklyn, New York 11233**
**(646) 393-9550**
**Fax (646) 393-9552**
**dwims@wimslaw.com**

1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT  3

ARGUMENT  4

  A.  JMOL IS REQUIRED HERE, REGARDLESS OF WHICH STANDARD APPLIES  4

  B.  BY ANY STANDARD, THE COMPENSATORY DAMAGE AWARD IS EXCESSIVE  12

  C.  THE PUNITIVE DAMAGE AWARD IS EXCESSIVE  14

CONCLUSION  17

## **PRELIMINARY STATEMENT**

This matter is before this Court on Defendants' post-trial motion for judgment as a matter of law, for a new trial and/or for a remittitur of the jury's verdict pursuant to Fed. R. Civ. P. 50(b) and 59(a), (b) and (e). In further support of this application, Defendants now submit this *Reply Memorandum of Law* in response to Plaintiff's opposition.

Plaintiff alleges in its opposition to the instant application that:

> The jury found that Plaintiff's supervisor, Mario Orantes, subjected her to extensive, almost daily sexual harassment during her six-year employment with Metropolitan Dental Associates (MDA) in the form of attempted sexual liaisons, physical touching, offensive comments, and retaliation for resisting his advances. Dr. Paul I. Cohen, who owned the practice, ignored Plaintiffs repeated complaints about her work environment. Plaintiff also personally saw Orantes harass four other female coworkers; he pursued them as he did Plaintiff: grabbing and summoning them into empty offices for sexual activity. Plaintiff also testified about the extensive pain and suffering occasioned by the harassment.

Plaintiff's Memorandum of Law in Opposition ("Pls. Opp.") at 1.

The Plaintiff's above statement has very little basis in fact on the instant record, and is contrary to the weight of the evidence at trial. The only reference in the record to *daily* sexual harassment during Plaintiff's six-year employment is Plaintiff's vague and conclusory statements, with no specifics like references to dates, times and/or locations. Trial Transcript ("Tr. Tx.") at 162:17-25, 164:5-11. Plaintiff presented no proofs of 'sexual liaisons' nor retaliation.[1] Id. at 166:13-25; 171:3-10; 173:6-11; 178:16-25. Nor was there evidence that Dr. Cohen ignored Plaintiff's harassment complaints, since the one complaint she made in writing failed to mention sexual harassment.

Nor did Plaintiff 'witness' Defendant Orantes sexually harass any other person. Tr. Tx. at 171:7-8, 173:13-15. Plaintiff's mere speculation is insufficient. Further, as Defendants' moving

---

[1] The Court dismissed Plaintiff's retaliation claims at summary judgment. See Docket #64.

3

papers indicated, the Plaintiff failed to produce a medical witness at trial to testify that any alleged emotional distress, or pain and suffering, which Plaintiff experienced, was in fact caused by Defendants' alleged sexual harassment of her.  No medical or lay witness was presented at trial.  The trial record is devoid of any evidence on causation.

Finally, Defendants did not waive any rights under Rule 50(a), and met the requirements with sufficient specificity.  The instant trial record does not support the verdict in any way.  Allowing it to stand will result in manifest injustice.

## ARGUMENT

### A. JMOL IS REQUIRED HERE, REGARDLESS OF WHICH STANDARD APPLIES

*1. Standard*

The standard governing motions for JMOL pursuant to *Rule 50* is well-settled. A court may not properly grant JMOL under *Rule 50* against a party "unless the evidence, viewed in the light most favorable to the non-moving party, is insufficient to permit a reasonable juror to find in his favor." *Arlio v. Lively,* 474 F.3d 46, 51 (2d Cir. 2007) (citing *Galdieri-Ambrosini,* 136 F.3d at 289).   Generally, a court reviewing such a motion must defer to all credibility determinations and reasonable inferences that the jury may have drawn at trial. See *Frank Sloup & Crabs Un-ltd., LLC v. Loeffler,* 745 F. Supp. 2d 115, 120 (E.D.N.Y. 2010). That is, a court considering a *Rule 50* motion "may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Meloff v. N.Y. Life Ins. Co.,* 240 F.3d 138, 145 (2d Cir. 2001) (quoting *Galdieri-Ambrosini,* 136 F.3d at 289); see also *Playtex Prods. V. P&G,* No. 02 CIV.8046 WHP, 2004 U.S. Dist. LEXIS 14084, 2004 WL 1658377, at *2 (S.D.N.Y. July 26, 2004) ("A *Rule 50(b)* motion cannot be granted 'if, drawing all reasonable inferences in favor of the nonmoving party and making all credibility assessments in his favor, there is sufficient evidence to permit a rational

juror to find in his favor.'" (quoting *Sir Speedy, Inc. v. L&P Graphics, Inc.,* 957 F.2d 1033, 1039 (2d Cir. 1992))).

Thus, JMOL is appropriately granted where "(1) there is such a complete **[\*13]** absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Advance Pharm., Inc. v. United States,* 391 F.3d 377, 390 (2d Cir. 2004) (alterations in original) (quoting *Galdieri-Ambrosini,* 136 F.3d at 289); see also *Kinneary v. City of N.Y.,* 601 F.3d 151, 155 (2d Cir. 2010) (same); *This is Me, Inc. v. Taylor,* 157 F.3d 139, 142 (2d Cir.1998) (stating that a court assessing a *Rule 50* motion must consider whether "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached" (quoting *Cruz v. Local Union No. 3, Int'l Bd. Of Elec. Workers,* 34 F.3d 1148, 1154-55 (2d Cir. 1994))).

In other words, this Court may only grant defendants' *Rule 50(b)* motion "if it cannot find sufficient evidence supporting the jury's verdict." *Playtex Products,* 2004 U.S. Dist. LEXIS 14084, 2004 WL 1658377, at \*2; see also *Black v. Finantra Capital, Inc.,* 418 F.3d 203, 209 (2d Cir. 2005) ("A court evaluating [] a motion [for JMOL] cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."). For this reason, a party moving to set aside a jury verdict must clear "a high bar." *Lavin-McEleney v. Marist College,* 239 F.3d 476, 479 (2d Cir.2001).

Where, as Plaintiff alleges here, a Defendant fails to satisfy the specificity requirement, "JMOL may neither be granted by the district court nor up-held on appeal unless that result is

5

required to prevent manifest injustice." *Galdieri-Ambrosini,* 136 F.3d at 287 (quoting Cruz, 34 F.3d at 1155). Whether to grant JMOL on the basis of a waived argument to prevent a manifest injustice is left to the court's discretion. See *Flannigan v. Vulcan Power Grp., LLC,* 642 F. App'x 46, 51 (2d Cir. 2016) ("[W]e may exercise our discretion to con-sider the [waived] issue if necessary to pre-vent manifest injustice." (citations omitted)); *Malmsteen v. Berdon, LLP,* 369 F. App'x 248, 249 (2d Cir. 2010) ("The forfeited issue *may be reached* if to ignore it would result in manifest injustice." (emphasis added) (citing *Fabri v. United Techs. Int'l, Inc.,* 387 F.3d 109, 119 (2d Cir. 2004))); *Wat Bey v. City of N.Y.,* No. 01 CIV. 09406 (AJN), 2013 U.S. Dist. LEXIS 189025, 2013 WL 12082743, at *12 (S.D.N.Y. Sept. 4, 2013) ("[T]he Court **[*27]** could, at its discretion, review the [waived] issue . . . if doing so was re-quired to prevent manifest injustice."). Nevertheless, "[w]here the argument presents a question of law and there is no need for additional fact-finding, and manifest injustice may arise, then exercise of this discretion is warranted." *Welch v. UPS,* 871 F. Supp. 2d 164, 178 (E.D.N.Y. 2012) (quoting *Malmsteen,* 369 F. App'x at 251).

The manifest injustice inquiry is fact-specific, *Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP,* No. 08-CV-931 PKC JO, 2015 U.S. Dist. LEXIS 73486, 2015 WL 3605143, at *4 (E.D.N.Y. June 5, 2015) ("What constitutes manifest injustice turns on the specifics of each case."), and "a defendant may not merely argue that the procedural bar should be waived because they should win on the underlying motion." *Welch,* 871 F. Supp. 2d at 178. Instead, he must establish that the "jury's verdict is wholly without legal support." *Patsy's Italian Rest., Inc. v. Banas,* 658 F.3d 254, 271 (2d Cir. 2011) (quoting *Russo v. New York,* 672 F.2d 1014, 1022 (2d Cir. 1982)). In *Russo*, for instance, the Second Circuit concluded that a jury verdict was "wholly without legal support" where the plaintiff "failed to prove one of the four essential elements of a

malicious prosecution action." 672 F.2d at 1022; see also *Sojak v. Hudson Waterways Corp.,* 590 F.2d 53, 54 (2d Cir. 1978); *Oliveras v. American Export Isbrandtsen Lines, Inc.,* 431 F.2d 814, 817 (2d Cir. 1970).

By contrast, where there is evidence to support each element of a claim, there is no manifest injustice when a court declines to entertain a sufficiency of the evidence argument on that claim. See, e.g., *Lore v. City of Syracuse,* 670 F.3d 127, 154 (2d Cir. 2012); *Cordius Trust v. Kummerfeld,* 331 F. App'x 810, 811 (2d Cir. 2009); *Kirsch,* 148 F.3d at 164; *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 281 (2d Cir. 1987). In addition, the Second Circuit has indicated that it "cannot find manifest injustice . . . where, had Defendants properly raised [an] issue at trial, 'it may be that Plaintiffs would have been able to present additional evidence'" on that issue. *Rivera v. City of N.Y.,* 594 F. App'x 2, 6 (2d Cir. 2014) (quoting *Kirsch,* 148 F.3d at 165) (brackets omitted).

In *Rivera*, for example, the district court found the evidence insufficient to support the jury's punitive damages award even though the defendant failed to make such an argument prior to the verdict. Id. at 4-5. The Second Circuit held that, because the defendant failed to challenge the sufficiency of the evidence in its *Rule 50(a)* motion, "the district court was not permitted to reach the question of the sufficiency of the evidence, and the subsequent vacatur of the punitive damages award was an abuse of discretion." Id. at 6. It expressly rejected the defendant's claim that vacatur of the award was necessary to prevent manifest injustice. Id.; see also *In re Johns-Manville Corp.,* 759 F.3d 206, 219 (2d Cir. 2014) (consideration of arguments raised for the first time on appeal is disfavored "where those arguments were available to the parties below and they proffer no rea-son for their failure to raise the arguments be-low" (quoting *In re Nortel Networks Corp. Sec. Litig.,* 539 F.3d 129, 133 (2d Cir. 2008) (brackets omitted))); *Corsair*

7

*Special Situations Fund, L.P. v. Nat'l Res.,* 595 Fed. Appx. 40, 44 (2d Cir. 2014) ("[A] judgment in a civil case does not constitute **[*29]** 'manifest injustice' where the movant's arguments for relief 'were available to the [party] below and [the party] proffer[s] no reason for [its] failure to raise the arguments.'" (quoting *Johns—Manville Corp.,* 759 F.3d at 219) (alterations in original)).

  2. *Waiver*

  Once a case has been submitted to the jury, a motion for JMOL "may be renewed only on grounds that were specifically articulated before submission of the case to the jury." *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 164 (2d Cir. 1998); see also *Provost v. City of Newburgh,* 262 F.3d 146, 161 (2d Cir. 2001) ("Because [defendant] did not specifically include a qualified immunity argument in his pre-verdict request for judgment as a matter of law, he could not have included such an argument in his post-verdict motion even had he attempted to do so."). The purpose of this "specificity requirement" "is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." *Galdieri-Ambrosini,* 136 F.3d at 286 (quoting *Baskin v. Hawley,* 807 F.2d 1120, 1134 (2d Cir. 1986)). Therefore, where a defendant arguably failed to satisfy the specificity requirement, "[t]he ultimate question is whether the motion, either of itself or in the context of the ensuing colloquy, was sufficiently specific to alert the opposing party to the supposed deficiencies in her proof." Id.

  In *Galdieri-Ambrosini*, by contrast, the Second Circuit concluded that the defendant adequately raised a particular argument with respect to multiple claims. 136 F.3d at 287. In that case, defense counsel made a detailed argument for JMOL prior to the verdict on the plaintiff's gender discrimination claim. Id. The district court then asked if the defendant's 50(a) motion

8

"was meant to encompass the [plaintiff's] retaliation claim," as the court "had not heard [defense] counsel include that claim." Id. Counsel replied, "I think that they follow. The issues are the same. There is no evidence, your Honor. I think that flows right through every cause of action." Id. (quoting trial transcript). The Second Circuit held that this comment rendered "the *Rule 50(a)* motion . . . sufficient to cover the claim of retaliation." Id.

In instances where manifest injustice has been found, however, the remedy is not JMOL, but rather a new trial during which plaintiff would have an opportunity to cure the defects that were not properly raised. See, e.g., *Baskin,* 807 F.2d at 1134 ("Thus, if the party moving for judgment n.o.v. has not moved for a directed verdict, and if the court is nevertheless satisfied that justice requires that the judgment be vacated for insufficiency of the evidence, the court should normally grant a new trial.").

    3. *Discussion*

Here, Defendants made their motion for a directed verdict at the close of Plaintiff's case. Tr. Tx. at 212. Thereafter, at the close of the trial, the Court asked Defendants if they had post-trial motions, to which they responded in the affirmative. Id. at 455:7-9. Defendants further reserved all rights, given that the Court invited the parties to make their post-trial motion on the papers. Id. at 458:11-13, 422:1-2, 423:3-12.

Assuming *arguendo* that Defendants waived any rights under Rule 50, the Court must act here to prevent a manifest injustice, given the disparity between Plaintiff's lack of admissible and credible evidence at trial and the jury's verdict. Plaintiff failed to prove the elements of hostile work environment sexual harassment under federal, state and local law. Plaintiff neither proved that any alleged sexual harassment was severe and pervasive; nor that it altered the terms and conditions of employment. In fact, she only proved stray and irrelevant remarks.

9

There is literally no evidentiary support in the instant record for the jury's verdict on liability and damages. This is because without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached – a defense verdict.

For example, Plaintiff alleges that "Plaintiff observed that Orantes and other female coworkers disappeared into an empty office for extended periods of time[.]" Pl. Opp. At 13. Plaintiff then cites *Liebovitz v. NYC. Transit Auth.,* 252 F.3d 179, 190 (2d Cir. 2001) for the proposition that evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment discrimination. While the legal proposition is true, Plaintiff does not know what allegedly occurred behind those closed doors, nor should it be relied upon in support of her claims. In other words, at trial she offered no admissible evidence to prove that issue.

Even so, Plaintiff argues that "The jury could infer that Orantes took women into these empty offices during business hours for sexual liaisons while patients were awaiting treatment, particularly since Orantes tried this tactic with Plaintiff." Pls. Opp at 14. No, the jury could not infer that, because the Plaintiff offered no proof or firsthand testimony regarding what allegedly happened behind those closed doors. In fact, the only evidence in the record on that issue is Defendant Orantes' firsthand testimony that he did no such thing. Contrary to Plaintiff's arguments, the jury is not free to infer any alleged facts it chose which would help the Plaintiff's case. Even if, for example, Defendant Orantes did call Plaintiff a 'fucking moron', there was no evidence at trial from Plaintiff that indicated that sexual or gender animus motivated this alleged comment. Referring to someone as a 'fucking moron' is not a facially discriminatory statement,

and it does not refer to one's gender or sex. In fact, such a reference supports Orantes' testimony that the Plaintiff was less than stellar in her work performance, requiring his reprimands.

To be clear, Plaintiff repeatedly testified about alleged incidents of sexual harassment from 2009 through 2013. Tr. Tx. at 172:1-5. None of the applicable statutes have a limitations period that would go back that far to be applicable to the instant matter. And Plaintiff never mentioned the continuing violations rule in its summary judgment papers, pretrial order or at trial. As the Court is fully aware, arguments raised for the first time after trial should be disregarded.

Plaintiff relies upon what was admitted as Plaintiff's Exhibit 1 at trial. That exhibit does not establish widespread and pervasive sexual harassment of Plaintiff's coworkers – and it was not admitted for the truth of the matters asserted therein. Tr. Tx. at 61, 65:4-25. It is relevant mostly to Plaintiff's retaliation claims, which were dismissed by the Court.

Plaintiff's failure to establish each element of her case by a preponderance of the evidence involves the legal question of legal sufficiency and requires no further fact-finding, such that even if the manifest injustice standard applies, Defendants meet the requirements here. This Court should grant Defendants judgment as a matter of law on liability on the hostile work environment claims, or grant a directed verdict to Defendants since the Court reserved decision on that motion at trial. Id. at 423:3-12.

Ultimately, Plaintiff argues that Defendants got a fair trial and no post-verdict relief, whether JMOL on liability, a new trial or remittitur, is required here. Pls. Opp. at 1. Here, the Court pondered on the record as to whether Plaintiff's repeated mishandling of evidence and plethora of hearsay testimony- all requiring curative instructions, were sufficient to overcome Plaintiff's lack of admissible evidence:

> I will hear argument from counsel later when we have time alone as to whether or not this is going to be sufficient, along with all the hearsay that's come in, and whether my curative and limiting instructions with respect to all that hearsay are cumulatively sufficient to capture and correct the misuse of evidence so that the jury can focus on the central issue they have to decide: Whether Mr. Orantes sexually harassed the plaintiff.

Tr. Tx. at 128.

Plaintiff is correct that the law presumes that the jury will follow the Judge's instructions. However, the jury's verdict in this instance directly contradicts the admissible evidence.

### B. BY ANY STANDARD, THE COMPENSATORY DAMAGE AWARD IS EXCESSIVE

*1. Plaintiff's Arguments*

Plaintiff next argues that the jury's compensatory damage award is not excessive. Pls. Opp. at 16-17. Plaintiff claims that "the record shows extensive pain and suffering caused by the sexual harassment, particularly since the work environment darkened Plaintiff's sunny personality." Id. at 17. This is untrue.

Plaintiff testified that she suffered emotional distress during the time period relevant to this case, there was no evidence on causation, something only a medical professional could attest to. Nor were there any medical records which opined as to causation. Plaintiff's lay testimony is insufficient, especially given that she is not a Physician, Psychiatrist or Psychologist. Nor is Plaintiff's mother a Physician, Psychiatrist or Psychologist, but rather also a Dental Hygienist.

Plaintiff's alleged emotional distress could have been caused by her experiences fleeing the political unrest in Kosovo, the recent birth of her baby or her recent marriage, inter alia. We do not know because Plaintiff failed to adduce any evidence on this topic. Plaintiff bore the burden of proof at trial on each and every element. Without proof on causation, no evidentiary basis

exists for any compensatory (or punitive) damage award, much less one as large as the instant jury verdict.

2. *Discussion of Precedent*

Plaintiff's case does not compare "favorably to those in which hostile work environment plaintiffs recovered even higher damages awards." Pls. Opp. at 19.  Plaintiff cites *Turley v. ISG Lackawanna, Inc.,* 774 F.3d 140, 162 (2d Cir. 2014), for this proposition.  However, *Turley* is easily distinguishable from the case at bar.  For example, Plaintiff in *Turley* was physically threatened, suffered panic attacks at work and was diagnosed with PTSD, inter alia. Id. at 150-51.  He also had to be taken to the hospital several times. Id.  The Plaintiff in *Turley* also sought and received substantial medical treatment, including medication and therapy, and unlike here, presented medical testimony and evidence at trial.  The *Turley* court indicated that "The case before us on appeal involves a pattern of extreme racial harassment in the workplace." Id. at 146.  The court went further, stating "The demeaning behavior of the plaintiff's [**3] tormentors included insults, slurs, evocations of the Ku Klux Klan, statements comparing black men to apes, death threats, and the placement of a noose dangling from the plaintiff's automobile." Id.

In other words, the harassing party's actions were *egregious and outrageous*.  Perhaps most important, the 2nd Circuit in *Turley* concluded that the award of punitive damages, even after remittitur, was excessive and reduced it further. Id. at 147.  This is true even though the Plaintiff in *Turley* was told, inter alia, "Shut up you fucking black crybaby [*150] bitch. Fuck you. You ain't shit. You're always crying like a bitch." Id. at 150.  *Turley* is unlike the case at bar.

Interestingly, the *Turley* court indicated that:

> Awards for mental and emotional distress are inherently speculative. There is no objective way to assign any particular dollar value to distress. Nonetheless, as we explained in discussing a claim of excessive punitive damages in *Payne*, "a legal system has an

obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." <u>Payne</u>, 711 F.3d at 93.

> We must ensure proportionality, to control for the inherent randomness of jury decisions concerning appropriate compensation for intangible harm, and to reduce the "burdensome costs on society" of over-extensive damages awards. <u>Stampf</u>, 761 F.3d at 205 (noting that, if appellate courts regularly affirm large damages awards in the name of deference to the jury, "the baseline of reasonableness will be constantly forced upward").

774 F.3d 162.

Because the Plaintiff did not prove what caused her alleged emotional distress, and offered no medical records or testimony here, there is no factual basis for a large compensatory damage award, unlike in the cases Plaintiff cites. Whether by way of JMOL, new trial or remittitur, this Court must act to make the ultimate result here just and consistent with controlling precedent and the facts adduced at trial.

### C. **THE PUNITIVE DAMAGE AWARD IS EXCESSIVE**

*1. Plaintiff's Arguments*

Plaintiff next argues that the jury's punitive damage award is not excessive. Pls. Opp. at 20-22. There was no reprehensible conduct here by Defendants which would serve as a basis for the unusually large punitive damage award. Dr. Cohen was the only person who testified about Defendants' response to Plaintiff's alleged complaints. Dr. Cohen testified that Plaintiff never told him about any alleged sexual harassment, and that he investigated the anonymous letter admitted for a limited purpose at Plaintiff' Exhibit 1 at trial. Since he did not know the letter's author, there was little Dr. Cohen could do. The Plaintiff's real purpose for Exhibit 1 was to inflame the jury, which it did.

*2. Discussion of Precedent*

Plaintiff also claims that "This case compares with other hostile work environment cases where the jury properly awarded punitive damages." Pls. Opp. at 22. Plaintiff cites *Duarte v. St.*

*Barnabas Hosp.,* 341 F. Supp. 3d 306, 329 (S.D.N.Y. 2018) for this proposition. However, *Duarte* is distinguishable. The Plaintiff in *Duarte* at trial had fact witnesses to the alleged harassment and presented medical testimony on causation and extent of damages, unlike the instant Plaintiff. 341 F. Supp. 3d 314-16. The Plaintiff there also received care from a medical professional for years, unlike Plaintiff Qorrolli. Id.

Interestingly, the *Duarte* court, on Defendants' post-trial motion, reduced the jury's award of compensatory damages to approximately 1/4 of the jury's verdict; and reduced the jury's award of punitive damages to approximately 1/5 of the jury's verdict. Id. at 325 and 333. This was done, at least in part, due to failure of proof of 'significant', as opposed to 'garden-variety' emotional distress, exactly like in this matter.

Here, there is no record evidence that Defendants engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Plaintiff offered no trial testimony on willfulness or recklessness. Similarly, no one testified to facts suggesting any recklessness on Defendants' part. For these reasons, *Duarte* is distinguishable and the jury's punitive damage award is excessive and without basis in fact or law.

A similar result was reached in *Turley*, supra. There, in reducing the award of punitive damages, the court stated that:

> We exercise relatively stringent control over the size of punitive awards in order to ensure that such damages are "fair, reasonable, predictable, and proportionate," to avoid extensive and burdensome social costs, and to reflect the fact that punitive awards are imposed without the protections of criminal trials. *Id*. at 93-96; *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008) (noting "the stark unpredictability of punitive awards"). Our review pursuant to these supervisory powers is for abuse of discretion in the denial of a reduction, but "the degree of discretion enjoyed by trial courts in these matters is relatively narrow." *Payne*, 711 F.3d at 100.

> Large punitive damages awards also implicate constitutional due process principles. *See Honda Motor Co. v. Oberg*, 512 U.S. 415, 420, 114 S. Ct. 2331, 129 L. Ed. 2d 336 (1994); *accord Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001). "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). We review de novo a district court's determination that a punitive damages award is not grossly excessive in violation of the United States Constitution. *Cooper Indus.*, 532 U.S. at 436; *Payne*, 711 F.3d at 100.

774 F.3d 164.

> The *Turley* court further stated, in relevant part:

> A lower award also is necessary to bring the punitive damages in this case into alignment with comparable awards in other cases. Upon reviewing the Second Circuit and New York cases brought to our attention, it appears that punitive awards for [**54] workplace discrimination rarely exceed $1.5 million. 25 *See, e.g., Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 76-77 (E.D.N.Y. 2002) (awarding $1 million, spread across multiple plaintiffs, for discrimination and retaliatory conduct); *Greenbaum v. Handelsbanken*, 67 F. Supp. 2d 228, 269-71 (S.D.N.Y. 1999) (Sotomayor, J.) (upholding $1.25 million award in sex discrimination case, noting that the defendants' actions, while malicious and deceitful, were "certainly less reprehensible than the worst imaginable violations"); *McIntyre*, 256 A.D.2d at 271, 682 N.Y.S.2d at 169 (remitting award to $1.5 million in case concerning harassment, retaliatory discharge, and IIED). A $5 million punitive damages award that is four times higher than the underlying compensation therefore appears to us to be excessive by comparison.

Id. at 166.

In the case at bar, the punitive damages award is nearly four times higher than the underlying compensation and is therefore also excessive by comparison. For all these reasons, this Court must reverse or substantially reduce the awards. Otherwise, manifest injustice will result.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request in the alternative, that the Court enter judgment as a matter of law in favor of Defendants on liability, substantially reduce the jury's award of compensatory and punitive damages and/or order a new trial. Fundamental notions of fair play and justice mandate the same.

Dated:  Brooklyn, New York

December 14, 2022

_____/s/_____
LAW OFFICE OF DAVID WIMS
David C. Wims, Esq. (DW-6964)
*Attorneys for Defendants*
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550