UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
  FORTESA QORROLLI,

                    Plaintiff,

      -against-

  METROPOLITAN DENTAL ASSOCIATES,
  D.D.S – 225 BROADWAY, P.C.,
  METROPOLITAN DENTAL ASSOCIATES,
  D.D.S., P.C.,
  MARIO ORANTES, individually, and
  DR. PAUL I. COHEN, individually,

                Defendants.
-------------------------------------------------------------------X

Civ. Case No.:
1:18-cv-06836-DLC-OTW

**[PROPOSED]
JURY INSTRUCTIONS**

## PROPOSED JURY INSTRUCTIONS

      PLEASE TAKE NOTICE that, Plaintiff, by and through his attorneys, Derek Smith Law Group, PLLC, pursuant to Rule 51 of the Federal Rules of Civil Procedure, respectfully requests that the Court give the following instructions to the jury, and such other instructions as may be submitted hereafter in accordance with later proceedings in this action.  With the Court's permission the parties wish to respectfully reserve the right to supplement these instructions at the close of the evidence if unanticipated factual issues have arisen during the course of trial.

**PROPOSED JURY INSTRUCTION NO:
1**

### INTRODUCTORY
REMARKS

      Ladies and gentlemen of the jury, I am now about to instruct you on the law that you will apply to the facts in this case.  You will then perform your most important function.  You will determine the facts in accordance with my instructions on the law.

Before I begin, I repeat my thanks and that of the parties for your patience and attention. We recognize the personal inconvenience you undergo to serve and extend, again, our appreciation for the important service you render to the administration of justice.

You have now heard all of the evidence in this case as well as the final arguments of the lawyers for the parties. We have reached the point where you will undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will approach your deliberations with the same patience you have displayed thus far and that you will act with fairness and impartiality to reach a just verdict.

My duty is to now instruct you as to the law, and your duty is to accept my instructions and apply them to the facts as you determine them. You should not single out any instruction as alone stating the law. All of my instructions are equally important and you should consider them as a whole when you deliberate.

You also should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be -- or ought to be -- it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you. If any attorney has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you and according to the law, as you gave your oath to do at the beginning of the case. The result of your work will be the verdict that you return. If we both perform our functions properly, then justice will have been served no matter what verdict you return.

3 Sand, Siffert, Reiss, Sexton & Thrope, Modern Federal Jury Instructions (1990), Instruction 71-2, Modified. [Hereinafter "Sand"]; *The Patapsco Ins. Co. v. Southgate*, 30 U.S. 604, 621, 8 L.Ed. 243 (1831); *Franks v. United States Lines Co.*, 324 F.2d 126 (2d Cir. 1963);3 Sand ¶ 71.01

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw the reasonable inferences to be drawn from the evidence, or lack of evidence. In determining these issues, no one may invade your province or

functions as jurors.  In order for you to determine the facts, without bias or prejudice in favor of, or against, any party.

Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  During the trial I have been called upon to make rulings on various questions. There may have been objections, or motions may have been made to strike answers. You are to disregard the reason for these matters. You are to disregard the fact that an objection was made and sustained or overruled or that conferences took place. The rulings I have made during the trial are not any indication of my views of what your decision should be.  These are matters of law and, although you may have been curious about them, you should not consider them. Of course, if at any time I instructed you to disregard anything that was said, then you must follow that instruction and pay no attention to that question or answer in your deliberations.

I also ask you to draw no inference from the fact that upon occasion I made comments, asked questions of certain witnesses, or said something to one or both of the attorneys.  These comments, questions and statements were only intended for clarification or to expedite matters, and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. From time to time, the attorneys and I may also have had sidebar conferences and other conferences out of your hearing.  None of these conferences should enter into your deliberations at all.  You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

3  Sand  71-3  (Modified);  3  Sand  ¶  71.01

With regard to any factual matter, your recollection and your recollection alone governs. Anything that counsel for either Plaintiff or the Defendant may have said with respect to matters in evidence, whether while questioning witnesses or in argument, is not to be substituted for your own recollection or evaluation of the evidence.  So, too, anything that I may have said during the trial or may say during these instructions as to any factual matter is not to be taken in place of your own recollection or judgment.

3 Sand ¶ 71.0

**PROPOSED JURY INSTRUCTION NO:
2**


<u>BURDEN OF
PROOF</u>


I will now describe to you what is called the "burden of proof." From television, books or movies you may have heard of something called proof beyond a reasonable doubt. That is the standard, or burden, of proof in a <u>criminal</u> trial. Since this is a civil trial, that requirement does not apply. You should therefore put it entirely out of your mind. The burden of proof in this case is called a preponderance of the evidence.


A "preponderance of the evidence" simply means the greater weight of the evidence. The weight of evidence refers to the quality of the evidence, not to the number of witnesses, the number of documents, or the amount of time a particular side spent presenting its case. It is the weight the evidence carries in your mind. Put another way, to prove something by a "preponderance of the evidence" simply means to prove that it is more likely so than not so.


3 Sand 73-2 (Modified); 3 Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, §§ 72.02 (1987 & Supp. 1993) (hereinafter, "Devitt"); <u>New York Pattern Jury Instructions</u>, Second Edition ("PJI") 1:23


To say that a party has the burden of proof on a particular issue means that, considering all the evidence in the case, the party's claim on that issue must be established by a preponderance of the evidence – the testimony, stipulations of fact, and documents – that you find worthy of belief. In order for a party to prevail on an issue on which it has the burden of proof, the evidence that supports its position on that issue must appeal to you as more nearly representing what happened than the evidence opposed to it. If it does not, or if it weighs so evenly that you are unable to say that there is a preponderance on either side, you must decide the question against the party which has the burden of proof, and in favor of the opposing party.

When I say in these instructions that a party has the burden of proof on any proposition, or use expressions like "if you find," or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of witnesses, regardless of who may have called them, the relevant exhibits received in evidence, regardless of which side may have produced them, and any stipulated facts, as I may have identified them to you.

You should also attach no significance to the fact that certain witnesses were called to testify by plaintiff or by defendant.  Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another.  Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party.  This is true with respect to any contested issue of fact in the case.  *Larson v. JoAnn Cab Corp.*, 209 F.2d 929 (2d Cir. 1954); 3

Sand 73-2

The law does not require any party to call as witnesses each and every person who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.  Federal Jury Practice and Instructions, § 73.11 (as modified).

## PROPOSED JURY INSTRUCTION NO:
## 3

### WHAT IS, AND IS NOT, EVIDENCE
### GENERALLY

The evidence in this case is the sworn testimony of the witnesses, both during trial and at deposition, the documents and other exhibits which have been received in evidence, and any facts which I have identified for you as either having been stipulated to by both sides or having been judicially noticed.

The questions asked by the attorneys are not evidence, nor the statements the attorneys made in their openings and summations. Objections, my rulings on those objections, and the various other arguments and statements made by the attorneys, or by me, during the trial are also not evidence. Finally, testimony that has been stricken or excluded, and documents or other exhibits which have not been admitted into evidence are also not evidence, and are not to be considered by you in your deliberations, or in reaching your verdict in this case.

The attorneys, on cross-examination, may have incorporated into a question a statement which assumed certain facts to be true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the attorney's question.

Also, if certain testimony was received for a limited purpose – such as for the purpose of showing a witness's state of mind – you must follow the limiting instructions I gave at the time that evidence was received.

What the attorneys said to you in their opening statements and in their summations was intended simply to help you understand the evidence, but was not evidence itself. If your recollection of the facts differs from what the attorneys said, you should rely upon your recollection, and not the attorney's statements.

Exhibits which were marked for identification, but were not actually admitted into evidence also may not be considered  nor may materials which were used solely to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of particular evidence do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

3 Sand 74-1 (Modified)

**PROPOSED JURY INSTRUCTION NO:
4**

<u>DIRECT AND CIRCUMSTANTIAL
EVIDENCE</u>

There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence.

Direct evidence is testimony by a witness about something he knows by virtue of his own senses  something he himself has seen, felt, touched, or heard.  Direct evidence may also be an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  A simple example of circumstantial evidence which is often used in this courthouse goes like this:  Assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Now assume that the courtroom blinds were drawn during the trial, so you could not see outside.  As the trial proceeded, someone walked into the courtroom with a dripping wet umbrella.  Then, a few minutes later, another person also entered with a wet umbrella.  Now remember, the blinds on the windows are drawn, so you can't see whether or not it is raining outside.  So you have no direct evidence of that fact.  But because you saw two people walk into the courtroom with wet umbrellas, it would be reasonable and logical to conclude that it had indeed been raining outside.  Those wet umbrellas are circumstantial evidence of the fact that it is, or was, raining outside.  You infer on the basis of reason, your own experience, and common sense, from one established fact – that two people walked into the courtroom with wet umbrellas – the existence of another fact – that it is, or was, raining outside.

Circumstantial evidence is of equal value to direct evidence.  The law generally makes no distinction between direct evidence and circumstantial evidence.  It simply requires that your verdict be based upon a preponderance of all the evidence, both direct and circumstantial, that has been presented.

3 Sand 74-2 (Modified)

**PROPOSED JURY INSTRUCTION NO:**
**5**

<u>INFERENCES</u>


During the trial, you may have heard the attorneys use the word "inference" in their opening statements or summations, or you may have heard them ask you to infer, on the basis of your own experience and common sense, one or more facts, with the assistance of some other fact.


An inference is not a suspicion or a guess. It is a reasonable, logical decision to conclude that a disputed fact exists based upon another fact which you know to exist.


There are times when different inferences may be drawn from the same facts. Not all such inferences, though, would be equally fair or reasonable. It is for you, and you alone, to decide whether to draw any inferences from the evidence you have heard and seen during the trial, and if so, what inferences may reasonably be drawn from that evidence. You may not use your experience and common sense to fill in or create evidence that does not exist, but you may use them to draw reasonable inferences from proven facts, or to weigh and evaluate the evidence, or lack of evidence, provided during the trial.


3 Sand 74-1


**PROPOSED JURY INSTRUCTION NO: 6**


<u>WITNESS CREDIBILITY</u>

You have now had the opportunity to observe all the witnesses, and it is time for you to decide how believable each witness was in his or her testimony.  Since you are the sole judges of the facts in this case, you must judge the credibility of each witness, and the importance of his or her testimony in this case.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and importance of each witness's testimony.

How are you to appraise or weigh their testimony?  There is no magic formula.  When you walked into this courtroom as jurors, however, you did not leave your common sense, your good judgment, or your experiences in life behind you. You carried those experiences and common sense with you into the jury box, and you will carry them into the jury room during your deliberations, as well.

Your determination of the credibility – by which I mean the believability – of a witness, very largely depends upon the impression that witness made upon you.  Did the witness's version appear straightforward and candid, or did the witness try to hide some of the facts?  Is there a motive of any kind to testify falsely or to shade the testimony offered?  Everything a witness said or did on the witness stand counts in your determination.  Indeed, often it is not what a person says but how he says it that moves us.  What you should try to do, in other words, is to "size the person up," just as you would do in any important matter when you are undertaking to determine whether or not a person is being truthful, candid and straightforward.

You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness of his testimony and its consistency.  You should also consider the probability or improbability of the witness's testimony when viewed in the light of all of the other evidence in the case.  The witness's demeanor, his or her relationship, if any, to the dispute or to one or the other of the parties, and any other potential bias or partiality, are also all factors in determining the witness's credibility.  There may be yet additional factors, and you may consider any that you believe bear on the witness's credibility.

If it appears that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories together.  If that is

not possible, you will then have to determine which of the conflicting versions you will accept. Use common sense and rely on your human experience.

The fact that certain witnesses were and still are employed by Defendant and the testimony you have heard of these witnesses' relationships with their employer may be considered by you in deciding whether the testimony of one or more of these witnesses is in any way influenced by the employment relationship with Defendant. *Adams v. Supermarkets General Corp.*, 525 N.Y.S.2d 208 (It is error to refuse to give the suggested charge if the witness is an employee of a party at the time of trial).

### PROPOSED JURY INSTRUCTION NO: 7

### <u>IMPEACHMENT</u>

A witness may be discredited, or "impeached", by a showing that at some earlier time the witness said or did something which is inconsistent with the witness's testimony here at trial. It is for you to determine, first, whether the prior statement or act was indeed inconsistent with the witness's trial testimony, and if so, whether the inconsistency is significant or inconsequential.

If you believe that a witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves. If you find that the witness made an earlier statement that now conflicts with the testimony that witness gave here at trial, you may accept, in part or in whole, the earlier testimony; you may accept, in part or in whole, the witness's testimony here at trial; or you may reject, in whole or part, both the prior and trial testimony.

In making this determination, you may consider whether the witness purposefully made a false statement now, or previously, or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; and whether the witness had a credible explanation for the inconsistency.

3 Sand 76-5


Evidence of the prior inconsistent statement was presented to you to help you decide whether to believe the trial testimony of that witness.  It is not to be considered by you as affirmative evidence in determining liability.


3 Sand 76-4, 76-5 (Modified)



**PROPOSED JURY INSTRUCTION NO:
8**


**DISCREPANCIES IN TESTIMONY, AND THE DOCTRINE OF *FALSUS IN UNO***


In considering the evidence presented to you at trial, you may find that there were discrepancies in a witness's testimony.  If you do, that is a proper basis for you to disbelieve that witness.  Such discrepancies, though, or differences between one witness's testimony and another's do not necessarily mean that that witness should be disbelieved completely.  Witnesses sometimes forget things, and even witnesses who are trying to be scrupulously truthful may be nervous or anxious when they testify, and contradict themselves or misspeak unintentionally.  Two people witnessing the same event may also see or hear it quite differently.  That is where your role as the jury comes in; it is your job to judge from both what a witness says, and how he or he appears, his or her testimony should be believed, and how much weight it should be given.


In weighing the significance of a discrepancy in testimony, you may wish to consider whether it relates to an important fact or merely to a trivial detail.  You should always remember, though, that a willful falsehood of any kind is a matter of importance, and should be considered seriously.

If you find that, during the trial, a witness has willfully testified falsely as to a material fact, the law permits you to disregard not only the testimony regarding that fact, but the testimony of that witness in its entirety. The law allows this on the principle that a person who testifies falsely about one material fact is likely to testify falsely about other facts, and possibly even about everything. You are not, however, required to disregard all of that witness's testimony. You may accept as much of the witness's testimony as you feel is true, and disregard as much of it as you feel is false.


## PROPOSED JURY INSTRUCTION NO: 9


## INTEREST IN THE OUTCOME AND OTHER BIAS


In evaluating a witness's testimony, you should consider whether he or he has an interest, or lack of interest, in the outcome of the case. Plaintiff and the Defendant, for example, all have interests in how this case is decided. As parties, they are all interested witnesses.


An interested witness is not necessarily less believable than a disinterested witness, and having an interest does not mean that the witness has not told the truth. It is for you to decide from the demeanor and testimony of each interested witness on the stand and such other tests as your experience dictates whether or not the testimony has been influenced, intentionally or unintentionally, by his or her interest.


You may, if you consider it proper under all of the circumstances, choose not to believe the testimony of an interested witness, even though it is not otherwise challenged or contradicted. However, you are not required to reject the testimony of such a witness, and you may accept all, or as much, of his or her testimony as you find reliable, and reject as much as you find unworthy of belief.


3 Sand 76-2 (Modified)

Another thing you should take note of in deciding whether or not to believe a witness, and how much weight to give his or her testimony, is any evidence of hostility or affection which that witness may have toward one side or the other in this case.  Likewise, you should note evidence of any interest or motive which the witness might have to cooperate with, or testify favorably for, one of the parties.  If you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and consider carefully whether it has been affected by that bias.

For example, you may consider an employment or other business relationship with the Defendant, as well as any other interest a party or witness may have, in determining whether that witness's testimony was in any way influenced by that relationship or interest.  In this case, there has been testimony from several witnesses who were, or who still are employees of the Defendant. The relationship of these witnesses to the Defendant, and the testimony you have heard regarding those relationships may be considered by you in deciding whether their testimony has in any way been influenced by those employment or other relationships.

PJI 1:92

**PROPOSED JURY INSTRUCTION NO: 10**

<u>DEPOSITION TESTIMONY</u>

During the trial, certain testimony has been read to you from transcripts of depositions taken at an earlier stage of the case.  Depositions are examinations of witnesses, under oath, by one or more of the attorneys in the case before trial.  The attorney's questions, and the witness's answers, are recorded by a stenographic reporter.   You should treat a witness's deposition testimony the same as if that testimony had been given live here in court, and weigh and consider it, and judge its credibility, using the same standards you would use with respect to any other evidence.

3 Sand 74-14 (Modified); PJI 1:25

**PROPOSED JURY INSTRUCTION NO:
11**

<u>STIPULATIONS OF
FACT</u>

The parties in this case have agreed that certain facts are true.  These are called stipulated facts.  In your deliberations, you must treat these facts as true, and thus as undisputed.

3 Sand 74-4 (Modified)

The parties have also agreed upon the admissibility of certain documents, and I have admitted them into evidence on that basis.  The fact that they have been admitted by agreement of the parties, however, does not mean that they should be given greater weight, or indeed, any weight, in your deliberations.  How much weight, if any, they are to be given remains exclusively your decision.

3 Sand 74-4

**<u>PROPOSED JURY INSTRUCTION NO.</u>**

**<u>12</u>**

**Summary of Claims**
**INTRODUCTION**

Members of the jury, I am now going to instruct you on the substantive law to be applied to Ms. Qorrolli's claims.

As stated, this is an employment discrimination case. In this lawsuit, Fortesa Qorrolli alleges that Defendants discriminated against her on the basis of her sex/gender and subjected her to a hostile work environment based on the same. — in sum, that Defendants knowingly permitted Defendant Orantes to subject her to a barrage of unwelcome sexual advances. Ms. Qorrolli is making these claims pursuant to Federal, State and local law (all of which I will instruct you on shortly).

Fortesa is alleging that Defendant Orantes made sexual advances and harassed her throughout her tenure at MDA by touching her and commenting on her appearance, and by verbally abusing her in front of Dr. Cohen. MDA had no written policy about reporting discrimination or sexual harassment in the workplace. Qorrolli asserts that some point, possibly in 2015, she complained to Dr. Cohen that she would not give in to Orantes' sexual advances in order to make him stop harassing her. Dr. Cohen did not take any action in response to this statement. In May 2016, Qorrolli resigned from her employment with Defendants. Defendants deny all of Plaintiff's allegations.

**PROPOSED JURY INSTRUCTION NO.**

**13**

**Summary of Claims**
**ELEMENTS OF SEX/GENDER DISCRIMINATION**

## UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Plaintiff has alleged that the corporate-employer Defendants discriminated against her on the basis of her sex/gender in violation of Title VII of the Civil Rights Act of 1964. Title VII states that:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his terms, conditions, or privileges of employment, because of. . . religion [.]

In this case, Plaintiff alleges that Defendants engaged in sex/gender discrimination:

Plaintiff alleges she was subjected to a hostile work environment based on sex/gender by unlawfully subjecting her to unwelcomed sexual advances from Defendant Orantes unreasonably interfered with her working conditions.

Defendants deny all of Plaintiff's allegations.

You should keep in mind these claims as they apply to the substantive laws moving forward.

Title VII is the only claim that is only being brought against the corporate Defendants, not the individual Defendants Cohen or Orantes. All other claims, as you'll hear, are being brought against all Defendants.

An action is an adverse employment action if it materially affects the terms, conditions, or privileges of employment. A loss of employment opportunities, wages or a reduction in pay as a result of an employer's actions constitutes adverse action.

<u>Source:</u> Ninth Circuit Manual of Model Civil Jury Instructions, No. 10.4A.2 ("Adverse Employment Action" In Disparate Treatment Cases), unmodified. Adverse employment actions take many forms. *See, e.g.*, *Dahlia v. Rodriguez*, 2013 WL 4437594 (9th Cir. Aug. 21, 2013)(en banc) (placement on administrative leave, deprivation of ability to take promotional exam, and loss of pay and opportunities for investigative or other job experience. Lost wages or income constitutes adverse

employment action. *Faul v. Potter*, 355 Fed. Appx. 527, 530 (2d Cir. 2009); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008); *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-224 (2d Cir. N.Y. 2001).


     Ms. Qorrolli is not required to produce direct evidence of unlawful motive. You may infer knowledge and/or motive as a matter of reason and common sense from the existence of other facts, for example, explanations that were given that you find were really pretextual.


> "Pretextual" means false or, though true, not the real reason for the action taken. An employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class. An employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class N.Y.C. Admin. Code §§8-107(1)(a), (13)(b); *Williams v. N.Y. City Hous. Auth.*, 61 Ad.D.3d 62, 71-75 (1st Dep't 2009), lv. Denied 3 N.Y.3d 702 (2009) ("the primary issue for a trier of fact in harassment cases, as in other terms and conditions cases, is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of h[is]" protected characteristic); McNamara, Todd J. and J. Alfred Southerland, Federal Employment Jury Instructions (2009) § 1:810 (harassment), citing *Faragher v. City of Boca Raton*, 118 S. Ct. 2275 (1998) and *Burlington Industries, Inc. v. Ellerth*, 118 S. Ct. 2257 (1998); *Id.* at §1:870 (unwelcome conduct defined), citing *Moylan v. Maries County*, 792 F.2d 746, 749 (8th Cir. 1986); *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (an employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class).


### PROPOSED JURY INSTRUCTION NO.

### 14

**Summary of Claims**
**Elements of New York State Human Rights Law**


     The New York State Executive Law § 296, or the New York State Human Rights Law, offers similar protects and additional protections for employees than Title VII and 1981 do.

The New York State Human Rights Law states:

"It shall be an unlawful discriminatory practice […] For an employer […], because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

Under the New York State Human Rights law, Plaintiff alleges she was discriminated against and subjected to a hostile work environment because of her sex/gender. Defendants deny this allegation.

Unlike Title VII, the New York State Human Rights Law additionally forbids:

"any person to aid, abet, incite compel or coerce the doing of any acts forbidden under [the New York State Human Rights Law], or attempt to do so."[1]

This is referred to as an "aiding and abetting" claim. Plaintiff alleges that Defendants aided and abetted in Defendant Orantes' alleged discriminatory conduct. Defendants deny this allegation.

You should note, a Defendant can be liable for aiding and abetting their own unlawful conduct.[2]

**PROPOSED JURY INSTRUCTION NO.**

**15**

**Summary of Claims**
**Elements of New York City Human Rights Law**

---

[1] New York State Executive Law §296(6)
[2] *Maher v. All. Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 262–63 (E.D.N.Y. 2009)

The New York City Administrative Code Title 8—also known as the New York City Human Rights Law—likewise offers employees protections both similar to and in addition to Title VII and the New York State Human Rights Law.

Section 8-107 [1] of the New York City Human Rights Law provides that:

"It shall be an unlawful discriminatory practice [...] For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

Under the New York City Human Rights Law, Plaintiff alleges she was discriminated against and subjected to a hostile work environment because of her sex/gender. Defendants deny this allegation.

Like the New York State law, the New York City law also provides a claim against an employer for aiding and abetting in that it is unlawful:

"For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

Plaintiff alleges that Defendants aided and abetted in Defendant Orantes' alleged discriminatory conduct. Defendants deny this allegation.

You should note, the same legal standards of analysis used to evaluate aiding and abetting claims under the New York State Human Rights Law apply to such claims under the New York City Human Rights Law.[3] I will discuss the application of these laws in your decision-making process shortly.

---

[3] *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).

Additionally, The New York City Human Rights law expressly provides an action against corporate defendants via "Supervisory Liability."[4] The law provides that:

> "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where; (i) the employee or agent exercised managerial or supervisory responsibility[.]"

Plaintiff, through this claim, seeks to hold the corporate Defendants liable for Defendant Orantes' alleged behavior. Defendants deny this behavior ever occurred.

### PROPOSED JURY INSTRUCTION NO.

### 16

**Application of Law**
**HOSTILE WORK ENVIRONMENT STANDARDS**

---

[4] New York City Administrative Code Title 8-107(13)(b).

The Federal, State, and Local Civil Rights law prohibits the creation of a hostile work environment caused by harassment because of an employee's protected characteristics. These laws have different definition of what a hostile work environment is and different standards for apply liability.

**PROPOSED JURY INSTRUCTION NO. X**

**Application of Law**
**Federal Law Hostile Work Environment**

To succeed in his Federal claims against Defendants, Fortesa must prove each other following facts by preponderance of the evidence:

a.  Fortesa was subjected to statements and/or actions because of her sex/gender;

b.  Fortesa did not welcome the offensive statements; and

c.  The conduct was sufficiently "severe or pervasive" that a reasonable person in Fortesa's position would find that the conduct materially altered the terms and conditions of her employment.

The Federal standard is "severe *or* pervasive" rather than severe *and* pervasive.[5] To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of Fortesa's employment, you should consider all the circumstances, including:

a. How often the discriminatory conduct occurred;

b. Its severity;

c. Whether it was humiliating; and

d. Whether is unreasonably interfered with Plaintiff's work performance.[6]

Proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."[7]

---

[5] *Pa. State Police v. Suders,* 542 U.S. 129, 133, 124 S.Ct. 242, 159 L.Ed. 204 (2004) (emphasis added); *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); see also *Jensen v. Jack E. Potter, U.S. Postal Service,* 435 F.3d 444 at 449 (3rd Cir. 2006) ("The disjunctive phrasing means that 'severity' and 'pervasiveness' are alternative possibilities . . .").
[6] *Finnerty v. William H. Sadlier, Inc.,* 176 Fed. Appx. 158, 160 2006 WL 910399, 1 (2d Cir. 2006) (quoting *Mack v. Otis Elevator Co.,* 326 F.3d 116 (2d Cir. 2003))
[7] *Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).

The corporate-employer Defendants in this case can be held liable for Mr. Oranes'
conduct. When an alleged harasser is in a supervisory position over an employee, the
objectionable conduct is automatically imputed to the employer for purposes of asserting a
hostile work environment claim. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 92d Cir.
2010). It is a stipulated fact in this matter that Mr. Orantes was Fortesa's supervisor.

You should apply this "severe or pervasive" standard to Fortesa's claims under the
Federal law and New York State Law only.

## PROPOSED JURY INSTRUCTION NO.

## 17

### Application of Law
### New York State & City Hostile Work Environment

The New York State and City Law requires you to apply a different standard in
determining whether Defendants subjected Brett to a hostile work environment. The New York
State and City Law is intended to be more protective than the federal counterparts and offers
more protection for New York employees.

Under the State and City Law standard, Ms. Qorrolli must prove that Defendants
subjected her to unwelcomed discriminatory conduct, that a reasonable person would find was
more than "petty slights and trivial inconveniences." Thus, a single act or comment related to
Fortesa's sex/genders may be sufficient for her to prove her case for hostile work environment

under the State and City law as long as the comment or comments are more than petty slights or trivial inconveniences.[8]

Like the Federal, under the New York State and City Human Rights Law the Defendants are strictly liable for the harassing and hostile acts of any of its supervisors. Strictly liable means that if you believe that Defendant Orantes, as Fortesa's supervisor, subjected her to conduct that is more than a petty slight or trivial inconvenience, then you must find in Plaintiff's favor against the corporate Defendant.[9]

When applying the New York State Human Rights Law, you should note what the law does *not* require for liability. Section 296(1)(h) expressly states:

> "The fact that such individual did not make a complaint about the harassment to such employer, […] shall not be determinative of whether such employer, licensing agency, employment agency or labor organization shall be liable."

Thus, the law makes it clear that Ms. Qorrolli complaining or not complaining about the alleged unlawful behavior shall not be determinative of whether such employer is liable.

Additionally, under the New York State Human Rights Law, Plaintiff is not required to show comparative employees treated favorably or less favorably.[10]

---

[8] N.Y.C. Admin Code §8-107(1)(a); *Farrugia v. North Shore Univ. Hosp.*, 13 Misc. 3d 740, 820 N.Y.S.2d 718 (Sup. Ct. N.Y. Cty. 2006); *Williams v. New York City Housing Authority*, 61 A.D.3d 62 (1st Dep't January 27, 2009); "It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences." N.Y. Exec. Law § 296.

[9] New York City Human Rights Law §8-107(13)(b)(1); Legislative Annual, at 187 (N.Y.S. Legislative Svc., Inc. 1991) ("[s]trict liability in employment context for acts of managers and supervisors…"). *See also Zakrzewska v. The New School*, 2009 U.S. Dist. LEXIS 5183, *21-*22 (S.D.N.Y. Jan. 26, 2009).
[10] "Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared." *Id.,* 296(1)(h)

**PROPOSED JURY INSTRUCTION NO.**

**18**

Sexual Assault Creating
Hostile Work
Environment


Courts and commentators alike agree that a single physical act — such as a physical  assault — can create a hostile work environment. See, e.g., Turnbull v. Topeka State Hospital,  255 F.3d 1238, 1243 (10th Cir. 2001) (case concerning sexual assault where court stated:  "Because frequency is merely one factor in the analysis, an isolated incident may suffice if the  conduct is severe and threatening."); Smith v. Sheahan, 189 F.3d 529, 534 (7th Cir. 1999)  ("'extremely serious' acts of harassment" like physical assault may be severe and need not also be  pervasive) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L.  Ed. 2d 662 (1998)); Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995) ("even a single  incident of sexual assault sufficiently alters the conditions of the victim's employment and  clearly creates an abusive work environment for purposes of Title VII liability"), abrogated  on other grounds by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998);  Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 580 (D.C. Cir. 2013)


**PROPOSED JURY INSTRUCTION NO.**

**19**

**Application of Law
Aiding & Abetting – Claims Under NYSHRL and NYCHRL**

The New York State and City Human Rights Laws also makes it unlawful for a person to  "aid, abet, incite, compel or coerce," any conduct that the law prohibits, or to attempt to do so.

Any employee or officer who was directly involved in any discriminatory or retaliatory acts against Fortesa can be held personally liable under the New York State and City Human Rights Law. This includes anyone who had the power "to hire, fire, demote, promote, transfer, or discipline" Fortesa, anyone who had "authority to affect [him] day-to-day work activities," and anyone who had the ability to "recommend tangible employment decisions" that would affect her, such as a negative performance evaluation, denial of a raise, reduction of a bonus, or termination may be held liable individually.

You must determine whether Defendants Orantes and Cohen are personally liable for the conduct described. You may find that Defendants Orantes and Cohen are personally liable if, by a preponderance of the evidence, you find that they participated in the alleged conduct giving rising to discrimination, or attempted to aid or abet or did aid or abet such conduct—even their own conduct.[11]

## PROPOSED JURY INSTRUCTION NO. X

### Damages – Introduction

---

[11] N.Y.C. Admin. Code § 8-107(1), (6), (13)(a)(b); *Harrison v. Banque Indosuez*, 6 F. Supp. 2d 224, 233-34 (S.D.N.Y. 1998); *Mack v. Otis Elevator Co.*, 326 F.3d 116, 126-127 (2d Cir.), cert. denied, 540 U.S.1016, 124 S.Ct. 562 (2003); PJI 9:1.; *Patrowich v. Chemical Bank*, 63 N.Y.2d 541 (1984); *Priore v. New York Yankees*, 307 A.D.2d 67, 761 N.Y.S.2d 608(1st Dep't 2003); *Murphy v. ERA United Realty*, 251 A.D.2d 469, 471, 674 N.Y.S.2d 415, 417 (2d Dept. 1998); *Farrugia v. North Shore Univ. Hosp.*, 13 Misc.3d 740, 749, 820 N.Y.S.2d 718, 725 (Sup. Ct. N.Y.Cty. 2006); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311-12, 819 N.E.2d 998, 1011 (2004); *Kent v. Papert Companies, Inc.*, 309 A.D.2d 234, 247-248, 764 N.Y.S.2d 675, 685 (1st Dep't 2003); *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472, 674 N.Y.S.2d 415, 417 (2d Dep't 1998); *Pace v. Ogden Svcs. Corp.*, 257 A.D.2d 101, 103 (3d Dep't 1999) (noting that plaintiff could establish employer liability by showing that employer knew or should have known of harassing conduct); *Town of Lumberland v. New York State Div. of Human Rights*, 229 A.D.2d 631, 636 (3d Dep't 1996) (same); *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 380-81 (S.D.N.Y. 1999); *Bennett v. The Progressive Corp.*, 225 F. Supp. 2d 190, 213-15 (S.D.N.Y. 2002); *Hayut v. State Univ. of N.Y.*, 127 F. Supp. 2d 333, 340-41 (N.D.N.Y. 2000); *Beattie v. Guilderland Central Sch. Dist.*, 124 F.Supp. 2d 802, 806 (N.D.N.Y. 2000); *Ahmed v. Compass Group*, 2000 U.S. Dist.LEXIS 10789 (S.D.N.Y. Aug. 3, 2000); *Hicks v. IBM*, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999).

If you find that plaintiff has met her burden of proof with respect to her discrimination claims under the federal, state, or city law, that is, that she has proven her claims by a preponderance of the evidence, then you must consider the issue of damages.

You should not reach the issue of damages unless you find that Plaintiff has established liability on at least one of her claims. You should note that for liability purposes, Plaintiff does not need to establish any specific loss of salary, wages or other benefits in order to establish a claim for discrimination.[12]

If you do find that Plaintiff is entitled to recover from the Defendants, you must render a verdict in a sum of money that will justly and fairly compensate, or make whole, Plaintiff for all the losses resulting from the injuries she sustained.

## PROPOSED JURY INSTRUCTION NO.

## 20

### COMPENSATORY DAMAGES

The purpose of the law of damages is to award, as far as possible, just and fair compensation for any loss that resulted from the Defendants' violation of Plaintiff's rights. If you find that the Defendants are liable on any of Plaintiff's claims, as I have explained them, then you must award her sufficient damages to compensate for any injury she suffered as a result of the Defendants' wrongdoing.

Compensatory damages can be inferred from the circumstances presented to you by the evidence, or they can be proven by testimony going solely to the issue of damages. They are not limited merely to expenses that Plaintiff may have incurred, although if you find that such

---

[12] *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998).

expenses have been incurred, your award of compensatory damages should include them. For example, if you find that Plaintiff incurred any costs and expenses for healthcare providers or medication, or is more likely than not to incur expenses for them in the future, you may include such amounts in your award, so long as you find those expenses were, or will have been, proximately caused by the Defendant's unlawful acts.[13] An award of compensatory damages for mental anguish may be based solely on the complainant's testimony.[14]

Compensatory damages include damages for emotional pain and suffering, mental anguish, humiliation, indignity, embarrassment, emotional distress, shock, discomfort, inconvenience and loss of enjoyment of life that you may find he has suffered as a result of the Defendants' unlawful conduct. The words "embarrassment" and "humiliation" are used in their everyday meaning. Not every embarrassment and humiliation, however, is compensable. Embarrassment and humiliation are compensable only when a reasonable person with ordinary sensibilities under the same or similar circumstances would be embarrassed or humiliated.

You decide to award compensatory damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require Plaintiff to prove any expense, lost earnings or other measurable damages in order for her to receive compensation for mental suffering, although you may find that she has in fact done so. The law also does not require her to prove the amount of any such losses with mathematical precision. She only needs to do so with as much definiteness and accuracy as the circumstances permit.

---

[13] Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993)

[14] Argyle Realty Associates v State Div. of Human Rights, 65 AD3d 273, 882 NYS2d 458; State v State Div. of Human Rights, 284 AD2d 882, 727 NYS2d 499; Father Belle Community Center v State Div. of Human Rights on Complaint of King, 221 AD2d 44, 642 NYS2d 739; Marcus Garvey Nursing Home, Inc. v State Div. of Human Rights, 209 AD2d 619, 619 NYS2d 106; Gleason v Callanan Industries Inc., 203 AD2d 750, 610 NYS2d 671.

There is also no requirement that a claim of emotional distress be supported by evidence from a medical or mental health professional who treated Plaintiff, or indeed, by the testimony of any witness. The damages that you award must simply be fair and reasonable, neither inadequate nor excessive.[15]

Even if you believe that Plaintiff is unusually emotionally sensitive and incurred greater emotional harm from the Defendant's discriminatory conduct than the harm that would have been suffered by an average person, the Defendant are responsible for this additional harm.[16]

The fact that Plaintiff may have a physical or mental condition that make her more susceptible to injury than a normal healthy person does not relieve the Defendants of liability for all injuries sustained as a result of its harassment and/or negligence. The Defendants are liable even though those injuries are greater than those that would have been sustained by a normal healthy person under the same circumstances.

---

[15] Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Black's Law Dictionary* 1103 (5th ed. 1979); New York City Transit Auth. v. State Div. of Human Rights, 78 N.Y.2d 207, 216, 577 N.E.2d 40, 573 N.Y.S.2d 49, 54 (1991), *on remand*, 181 A.D.2d 891, 581 N.Y.S.2d 426 (2d Dep't 1992); Schulman v. Group Health Inc., 39 A.D.3d 223, 225, 833 N.Y.S.2d 62, 64 (1st Dep't 2007); Sogg v. American Airlines, Inc., 193 A.D.2d 153, 163, 603 N.Y.S.2d 21, 27 (1st Dep't 1993), *app. denied,* 83 N.Y.2d 754, 612 N.Y.S.2d 109 (1994); McIntyre v. Manhattan Ford, 256 A.D.2d 269, 682 N.Y.S.2d 167 (1st Dep't 1998); Walsh v. Covenant Hse., 244 A.D.2d 214, 664 N.Y.S.2d 282 (1st Dep't 1997); Bracker v. Cohen, 204 A.D.2d 115, 612 N.Y.S.2d 113 (1st Dep't 1994); Boodram v. Brooklyn Dev. Ctr., 2003 N.Y. Misc. LEXIS 1582 (Civ. Ct. N.Y. Cty. 2003) (collecting cases and recognizing award for future lost earnings and future emotional distress); T.P.I. - Civil 11.75, *Embarrassment and Humiliation*; Harman v. Moore's Quality Snack Foods, 815 S.W.2d 519 (Tenn. App. 1991)
[16] Williamson v. Handy Button Mach. Co., 817 F.2d 1290, 1294 (7th Cir. 1987).

## PROPOSED JURY INSTRUCTION NO.

## 21

### Lost Wages

In addition, the non-pecuniary damages, you can award Fortesa monetary damages in the form of back-pay, front-pay, out of pocket expenses, and other economic loss that came about as a result of Defendants' alleged violations of law.

If you find that Defendants subjected Fortesa to a hostile work environment because of her sex/gender then you must award as actual damages an amount that reasonably compensates Fortesa for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that she would have received from Defendants had Plaintiff not been the subject of Defendants' discrimination.

Back pay damages, if any, apply from the time Plaintiff was terminated until the date of your verdict. If you award back pay, you are instructed to deduct from the back pay figure whatever wages Plaintiff has obtained from other employment during this period.[17] Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. Factors to be considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment.[18]

---

[17] Model Civ. Jury Instr. 3rd Cir. § 8.4.2 (2019)(modified)

[18] "Any form of money damages is a legal remedy to be decided by the jury under the New York State Human Rights Law." *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573 (S.D.N.Y. 2011); *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 261 (S.D.N.Y. 2007);

## **PROPOSED JURY INSTRUCTION NO.**

## **22**

### **PROXIMATE CAUSE**

You may award compensatory damages for all of the injuries that Plaintiff proves were proximately caused by the Defendants' unlawful conduct. Injuries are proximately caused by an act, or a failure to act, whenever it appears from a preponderance of the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably probable consequence to the act or omission.

## **PROPOSED JURY INSTRUCTION NO.**

## **23**

### **PUNITIVE DAMAGES[19]**

If you find in favor of Plaintiff under the Federal and State law, those laws also allows you to award punitive damages to her, and against the Defendants.

The purpose of an award of punitive damages is to punish a wrongdoer for misconduct and to warn others against doing the same. You may, but do not have to award these damages, if

---

[19] *Levitant v. New York Human Res. Admin.*, Index No. 1:05-cv-00230-KAM-JO, Dkt. No. 141 (E.D.N.Y Apr. 24, 2012) (Matsumoto, J.); Sand, Modern Federal Jury Instructions Civil 77.03 (2017); 42 U.S.C. §1981a(a)(1), (b)(2) and (b)(3); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264-65 (1946); *Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York*, 310 F.3d 43, 56 (2d Cir. 2002); *Walz v. Town of Smithtown*, 46 F.3d 162, 170 (2d Cir. 1995); *Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir. 1993); *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992).

you find that the Defendants willfully violated Plaintiff' rights, or acted wantonly, recklessly or maliciously in doing so.

To willfully violate the law is nothing more, nor less, than to do so intentionally. To act maliciously is to act deliberately, with knowledge of Plaintiff' rights, and the intention of interfering with those rights. To act wantonly and recklessly is to act in such a way and under such circumstances as to show conscious indifference and utter disregard for the effect of your acts upon the rights of others. You may consider outrageous or egregious conduct as evidence of a motive warranting the award of punitive damages. You may award punitive damages if you find either that Defendants actually derived satisfaction from hurting Plaintiff or, if Defendant's management, while not having any particular desire to hurt Plaintiff, nevertheless trampled on Plaintiff' rights in a fashion that fairly can be called reckless.[20]

If you decide to award punitive damages, it is up to you to determine a fair, just and reasonable amount which would be sufficient to deter the Defendants, and others like them, from engaging in similar wrongful conduct in the future.[21]

Plaintiff does not need to demonstrate that the Defendant's conduct was egregious or outrageous in order to be entitled to punitive damages; instead, she needs only to have shown

---

[20] Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625(1983); Keenan v. City of Philadelphia, 983 F.2d 459, 471 (3d Cir. 1992); Soderbeck v. Burnett Cty., 752 F.2d 285,289 (7th Cir. 1985) *cert denied,* 471 U.S. 1117, 105 S.Ct. 2360 (1985); Kolstad v. American Dental Ass'n, 527 U.S. 526, 538-39, 119 S.Ct. 2118, 2126 (1999); N.Y.C. Admin Code § 8-502(a)

[21] 3 Sand 77-5; Franklin v. Gwinnett Country Pub. Sch., 503 U.S. 60, 112 S.Ct. 1028 (1992); Luciano v. Olsten Corp., 109 F.3d 111 (2d Cir. 1997); Benjamin v. United Merchants and Manufacturers, Inc., 873 F.2d 41 (2d Cir. 1989); Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 924 n.7 (2d Cir. 1981); *Manual of Model Civil Jury Instructions for the District Courts of the 8th Cir.*, §§ 5.04, 5.24 (1995); Devitt §§ 7104.07, 104A.12 (1994 Supp.); Kolstad v. American Dental Ass'n, 527 U.S. 526, 534, 119 S.Ct. 2118, 2124 (1999); Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 (1983); Adickes v. S.H. Kress & Co., 398 U. S. 144, 233-34, 90 S.Ct. 1598, 1642-43 (1970); Cochetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir. 1978); Guzman v. Western State Bk., 540 F.2d 948 (8th Cir. 1976)

that the Defendants either knew or perceived that there might be a risk that they were violating his rights, or that the Defendants acted maliciously toward Plaintiff.[22]

It is also not necessary for Plaintiff to present direct evidence of malicious intent, or reckless indifference, on the part of a Defendant in order to justify an award of punitive damages against Defendants. Such intent may be inferred by you from the nature of the acts committed by the Defendants, and from the facts and circumstances surrounding such acts.[23]

There is also no requirement that Plaintiff show a pattern of wrongdoing for punitive damages to be awarded; a single act, which is either malicious or recklessly indifferent to his statutorily protected rights will suffice.[24]

If you decide to award punitive damages to Plaintiff, you should consider the following factors in assessing the amount of such damages:

(1) The nature and reprehensibility of what the Defendants did, including the character of the wrongdoing; whether the Defendants' conduct demonstrated an indifference to, or reckless disregard of, the rights of others; the vulnerability of Plaintiff; how long the conduct went on; the Defendants' awareness of the harm caused by their conduct; and any concealment of the conduct;

---

[22] Kolstad v. American Dental Ass'n., 527 U.S. 526, 534-35, 119 S.Ct. 2118 (1999); Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 384-385 (2d Cir. 2001); Luciano v. Olsten Corp., 110 F.3d 210, 219-20 (2d Cir. 1997)

[23] 42 U.S.C. § 1981a(b)(1); Perry v. Larson, 794 F.2d 279 (7th Cir. 1986); Kolstad v. American Dental Ass'n, 527 U.S. 526, 543-44, 119 S.Ct. 2118, 2128 (1999); United States *v. H.M. Branson Distributing Co., 398 F.2d 929 (6th Cir. 1968); Zilig v. Prentice-Hall, Inc., 515 F. Supp 716 (S.D.N.Y. 1981)

[24] Kolstad v. American Dental Ass'n, 527 U.S. 526, 536-39, 119 S.Ct. 2118, 2125-26(1999); Rowlett v. Anheuser-Busch, 832 F.2d 194, 206 (1st Cir. 1987)

(2) The actual and potential harm created by the Defendants' conduct (including Plaintiff' trouble and expense in seeking to protect its interests in this lawsuit, and any prior legal proceedings); and

(3) The Defendants' financial condition and resources, and the impact that your award will have on them.

The amount of punitive damages you award must be reasonable and proportionate to the actual and potential harm suffered by Plaintiff, and to any compensatory damages which you award.[25]

The amount you assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages and it is not necessary that you award compensatory damages to Plaintiff in order to assess punitive damages against Defendant, so long as you find in favor of Plaintiff and against Defendant on the question of liability.[26]

---

[25] PJI § 2:278; N.Y.C. Admin. Code §§ 8-126, 8-502; Umansky v. Masterpiece Int'l Ltd., 276 A.D.2d 692, 715 N.Y.S.2d 638 (2d Dep't 2000) (relying on federal standards for punitive damages and citing Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118 (1999)) (damages in civil rights context); McIntyre v. Manhattan Ford, 256 A.D.2d 269, 682 N.Y.S.2d 167 (1st Dep't 1998) (damages of civil rights context); Walsh v. Covenant Hse., 244 A.D.2d 214, 664 N.Y.S.2d 282 (1st Dep't 1997) (same); Bracker v. Cohen, 204 A.D.2d 115, 612 N.Y.S.2d 113 (1st Dep't 1994) (same); Boodram v. Brooklyn Dev. Ctr., 2003 N.Y. Misc. LEXIS 1582 (Civ. Ct. N.Y. Cty. 2003); Alexander v. Riga, 208 F.3d 419, 430-432 (3d Cir. 2000). Hennessy v. Penril DataComm. Networks, 69 F.3d 1344 (7th Cir. 1995); Edwards v. Jewish Hosp., 855 F.2d 1345, 1352 (8th Cir. 1988); Hicks v. Brown Group Inc., 902 F.2d 630, 653 (8th Cir. 1990); Goodwin v. Circuit Court, 729 F.2d 541, 542-43 (8th Cir.), *cert denied*, 469 U.S. 828, 105 S.Ct. 112 (1984)

[26] Hennessy v. Penril DataComm Networks, 69 F.3d 1344, 1351-52 (7th Cir. 1995); Edwards v. Jewish Hosp., 855 F.2d 1345, 1352 (8th Cir. 1988); Hicks v. Brown Group Inc., 902 F.2d 630, 653 (8th Cir. 1990); Goodwin v. Circuit Court, 729 F.2d 541, 542-43 (8th Cir.), *cert denied*, 469 U.S. 828, 105 S.Ct. 112 (1984); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270, 101 S.Ct. 2748, 2761 (1981).

Punitive damages under the Plaintiff's New York City claims, shall be assessed differently and separately from the related Federal and State claims.

Under the New York City claim, Fortesa is entitled to punitive damages if you find the Defendants' actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.[27] Therefore, the "intent" requirement, as is required to award punitive damages under the Federal and State law, is not required under the New York City law. "Negligence" in this case is defined as a "failure to use such care as a reasonably prudent and careful person would use under similar circumstances."

Also note, while Title VII, the New York City Human Rights Law, and the New York State Human Rights Law, all allow for a finding of punitive damages, New York State and City have no cap on punitive damages whatsoever.

---

[27] Chauca v. Abraham, 30 N.Y.3d 325, 329, 89 N.E.3d 475, 477 (2017).

## **PROPOSED JURY INSTRUCTION NO.**

## **24**

**FINAL GENERAL CHARGES**
**Right to See Exhibits and Hear Testimony;**
**Communications With Court**

Ladies and gentlemen of the jury, that about concludes my instructions to you.  You are about to go into the jury room to begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read, please send out a note specifying what you want to hear and we will bring you back to the Courtroom to read it back for you.  Please be as specific as you possibly can in requesting exhibits or portions of the testimony.  If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony -- in fact any communications with the Court -- should be made to me in writing, signed by your foreperson, and given to the Courtroom Deputy.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

## PROPOSED JURY INSTRUCTION NO.

## 25

### NOTES

Many of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

## **PROPOSED JURY INSTRUCTION NO.**

## **26**

### **USE OF PROFESSIONAL EXPERTISE**

Although as jurors you are encouraged to use all of your life experiences in analyzing testimony in reaching a fair verdict, you may not communicate any personal professional expertise you might have, or other facts not in evidence, to the other jurors during the deliberations. You may not consider or speculate on matters not in evidence or matters outside the case, but rather must base your discussions and decisions solely upon the evidence presented to you during the trial.

## **PROPOSED JURY INSTRUCTION NO.**

## **27**

### **JUROR OATH**

In determining the facts in this case, I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

## **PROPOSED JURY INSTRUCTION NO.**

## **28**

### **DUTY TO DELIBERATE / UNANIMOUS VERDICT**

You will now retire to decide the case.  For Plaintiff to prevail on her claim, she must sustain her burden of proof as I have explained it to you with respect to each element of her claims.  If you find that plaintiff has succeeded with respect to her claims, you must return a verdict in her favor.  If you find that she has not, then your verdict must be for defendants.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No

juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

## PROPOSED JURY INSTRUCTION NO.

## 29

**VERDICT FORM**

I have prepared a verdict form for you to use in recording your decisions. Remember, each verdict must reflect the conscientious judgment of each juror. You should answer every question except where the verdict form indicates otherwise. You should also proceed through the questions in the order in which they are listed.

## PROPOSED JURY INSTRUCTION NO.

## 30

**Duties of Foreperson**

Finally, you should by your own vote select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the Courtroom Deputy that the jury has reached a verdict, and you will come into open court and give the verdict.

## PROPOSED JURY INSTRUCTION NO.

## 31

**Return of Verdict**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the Courtroom Deputy outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

## PROPOSED JURY INSTRUCTION NO.

## 32

### Exceptions

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have me give to you or anything I may not have covered in my previous statement.

In this regard, I ask you not to discuss the case while seated in the box because the case has not yet been formally submitted to you.

Date:   August 26, 2022
        New York, New York

                        Respectfully Submitted,

                        **DEREK SMITH LAW GROUP, PLLC**

                        */s/ Zachary Holzberg*
                        Zachary Holzberg, Esq.