**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X         CIVIL ACTION NO. 18 CV 6836
FORTESSA QORROLLI,                                                           (DLC)(OTW)

**DEFENDANTS'**
**MEMORANDUM**
                                      Plaintiff,          **OF LAW IN OPPOSITION**

              -against-

METROPOLITAN DENTAL ASSOCIATES, D.D.S. – 225
BROADWAY, P.C.,
METROPOLITAN DENTAL ASSOCIATES, D.D.S., P.C.,
MARIO ORANTES, individually, and
DR. PAUL I. COHEN, individually,


                                      Defendants.
------------------------------------------------------X


**LAW OFFICE OF DAVID WIMS**
**David C. Wims, Esq.**
*Attorneys for Defendants*
**1430 Pitkin Avenue, 2nd Floor**
**Brooklyn, New York 11233**
**(646) 393-9550**
**Fax (646) 393-9552**
**dwims@wimslaw.com**

1

## *TABLE OF CONTENTS*

*PRELIMINARY STATEMENT* — 3

*LEGAL STANDARDS* — 4

*ARGUMENT* — 5

   A. *THE JURY'S VERDICT IS SUPPORTED BY THE WEIGHT OF THE EVIDENCE* — 5

   B. *THE NOMINAL DAMAGES AWARD IS SUPPORTED BY THE EVIDENCE* — 10

*CONCLUSION* — 12

**PRELIMINARY STATEMENT**

This matter is before this Court on Plaintiff's post-trial motion for a new trial on damages only and/or for amendment of the February 14, 2023 judgment pursuant to Fed. R. Civ. P. 59(a)(1)(A) and (e). See Docket ##181-184. In opposition to Plaintiff's application, Defendants submit Counsel's *Declaration* and this *Memorandum of Law*. For the following reasons, Plaintiff's motion should be denied in its entirety.

This case was first tried before a jury and the Honorable Denise L. Cote beginning October 24, 2022 through October 27, 2022. See October 24, 2022 through October 27, 2022 Minute Entries. On October 26, 2022, the jury returned a verdict on liability for Plaintiff and awarded Plaintiff $575,000.00 in compensatory damages for emotional distress. Id. Then, on October 27, 2022, the jury awarded Plaintiff $2,000,000.00 in punitive damages. Id.

On November 18, 2022, Defendants filed their post-trial motions seeking a new trial, inter alia. See Docket ##127-129. On December 15, 2022, Judge Cote granted Defendants' motion for a new trial. See Docket #146. The parties again tried this case before a jury from February 6, 2023 through February 9, 2023. See Docket Minute Entries dated February 6, 2023 through February 9, 2023.

The second jury found against Plaintiff on both its federal and state hostile work environment sexual harassment claims; and in favor of Plaintiff on its city hostile work environment sexual harassment claim, awarded Plaintiff $1.00 in nominal damages and declined to award compensatory or punitive damages. See Docket #177. The Court entered judgment thereon on February 14, 2023. See Docket #178. This matter was then referred to the Honorable Magistrate Judge Aaron for settlement purposes. See Docket #179. Plaintiff filed a Notice of Appeal on March 3, 2023. See Docket #180.

On March 14, 2023, Plaintiff filed the instant motion for a new trial, arguing that significant evidentiary issues warrant a new trial on damages only and that the second jury's award to Plaintiff of nominal damages is not supported by the weight of the evidence. See Docket ##181-184; Plaintiff's Memorandum of Law ("PMOL") at 1.

## LEGAL STANDARDS

Pursuant to Rule 59(a), a court may grant a new trial "for any reason for which a new trial [*18] has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). However, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Snyder v. N.Y. S. Educ. Dep't*, 486 F. App'x 176, 177 (2d Cir. 2012) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997)); see also *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992) ("[F]or a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice[.]" (internal quotation marks and citations omitted)).

Additionally, caselaw makes clear that "[c]ourts are not free to. . . set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Medina v. Donaldson*, No. 10 Civ. 5922 (VMS), 2014 U.S. Dist. LEXIS 33723, 2014 WL 1010951, at *14 (E.D.N.Y. Mar. 14, 2014) (internal quotation marks and citation omitted).

**ARGUMENT**

A. **THE JURY'S VERDICT IS SUPPORTED BY THE WEIGHT OF THE EVIDENCE**

    *1. Plaintiff's diary's inadmissibility*

The Plaintiff first argues that its diary should have been admitted at trial. PMOL at 2. Plaintiff cites several cases which allegedly stand for that proposition. However, none of those cases are from this Court, or even the 2nd Circuit Court of Appeals.

The diary is inadmissible hearsay and Plaintiff failed to lay a foundation for its credibility, reliability and trustworthiness since it was electronically maintained and could be easily modified. See FRE 801; *Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir. 1998) ("Collins [*29] submitted the diary entries to prove that the events reported therein actually occurred. . . . As such, the diary entries are hearsay."); ("For a diary to be admissible under Rule 803(5), the party seeking to admit the document must establish 1) that the record concerns a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately; and 2) that the witness made or adopted the record when the matter was fresh in the witness's memory and the record reflects that knowledge correctly.").

A jury could interpret the diary entries out of context. In addition, any information contained therein could have been conveyed to the jury by way of Plaintiff's direct testimony, with or without the aid of referring to said diary to refresh Plaintiff's recollection of the alleged underlying events. In this instance, that is what occurred at the second trial. Because its admission was prejudicial to Defendants, it was properly excluded by the Court. Any probative value is outweighed by the prejudicial effect, and it was properly excluded under FRE 403 and 801.

### 2. *Plaintiff's medical records' inadmissibility*

Next, Plaintiff argues that Plaintiff's medical records from Dr. Lee should have been admitted at the second trial. PMOL at 3.  Defendants objected on the basis of hearsay, lack of foundation and lack of relevance.  The subject records contained no statement about the cause of Plaintiff's diagnoses contained therein, and it is beyond the purview of the lay person jury to make medical conclusions about the causes of Plaintiff's conditions and/or diagnoses.

Allowing the jury to see the subject medical records would likely confuse it and invite the jury to opine as to causation, thus it was properly excluded under Fed. R. Evid. 403.  Admission of these records would be highly prejudicial to Defendants.  Plaintiff needed a medical expert to explain the records, but failed to list any expert witnesses in its initial disclosures, which is one of the reasons the Court excluded the medical records during the first trial.

Further, Plaintiff's medical records include a diagnosis of Post-Traumatic Stress Disorder ("PTSD"), Diagnostic & Statistical Manual IV ("DSM") code 309.81.  The records indicate that this PTSD diagnosis is for a person *who experienced a highly traumatic event when he or she was six years old or younger*.  The record in this case clearly establishes that Plaintiff began working for Defendants in 2009, when she was approximately twenty (20) years old. See February 2023 Trial Transcript ("Tr. Tx.") at 94:1-5.  Further, Plaintiff and her mother testified at both trials that they, and the entire family fled the political turmoil in Kosovo when Plaintiff was six years old. Tr. Tx. at 213:21-25, 214:1-22.  Interestingly, the DSM contains diagnostic criteria for code 309.81 which states:

> A. The person has been exposed to a traumatic event in which both of the following were present:
> (1) the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others
> (2) the person's response involved intense fear, helplessness, or

6

> horror. Note: In children, this may be expressed instead by disorganized or agitated behavior.

Here, there is no record evidence at either trial that the alleged improper conduct of which Plaintiff complained involved actual or threatened death, serious injury or a threat to Plaintiff's physical integrity.  Certainly, being harmlessly touched approximately four times, if one believes the Plaintiff, and being admonished for her work performance does none of that.  As such, the medical records were totally irrelevant in the absence of a medical expert to explain them to the jury.  They are also highly prejudicial to Defendants.

The U.S. District Court for the Eastern District of New York recently dealt with a similar issue and stated:

> The Court will not allow the wholesale admission into evidence of Plaintiff's entire medical file. Even though the majority of Plaintiff's medical records likely qualify for the hearsay exception described in Fed. R. Evid. 803(6), the Court must ensure that such records will not be unduly confusing or misleading to lay jurors. See Fed. R. Evid. 403; *Scoma*, 2021 U.S. Dist. LEXIS 85360, 2021 WL 1784385, at *14. To guard against this issue, the Court will allow a party to admit a medical record into evidence only if that party either: (a) identifies "a witness with specialized skill and knowledge" who plans to explain that record to the jury or (b) demonstrates that the record is sufficiently simple that it "do[es] not require specialized knowledge or skill to understand." *Duchnowski v. Cty. of Nassau*, 416 F. Supp. 3d 179, 183 (E.D.N.Y. 2018).

*Brady v. Foodliner, Inc.*, 2022 U.S. Dist. LEXIS 91641 *9 (EDNY 2022).

The lay person jury lacked the required specialized knowledge or skill to understand and interpret the medical records.  Further, it's unclear which actual medical records Plaintiff sought to admit since its exhibit list in the parties' 1/18/2023 proposed, joint pre-trial order does not specify. See Docket #154.  The subject exhibit list contained groups of documents by Bates Stamp ranges, not by exhibits.  This is contrary to the letter and spirit of full disclosure contemplated by the FRE and was not countenanced by this Court in its exercise of provident discretion.

### 3. *Mercedes Vila's deposition transcript's inadmissibility*

The Court ruled that the deposition testimony of Mercedes Vila was not admissible given that Ms. Vila is not unavailable to testify at trial. As the Court may recall, Plaintiff claimed at the first trial that Ms. Vila was unavailable to testify in person at trial due to a recent medical diagnosis. However, when counsel for the parties deposed Ms. Vila, she was at her workplace. Since she can travel to work, she can travel to the courthouse. Therefore, her deposition testimony is inadmissible for lack of unavailability of the declarant.

Even assuming she had come to testify in person at trial, her testimony was irrelevant, duplicative and prejudicial. Plaintiff wished to present her to testify that she was subjected to improper conduct at the hands of Mario Orantes. Whether true or not, her testimony would not make Plaintiff's allegations any more or less likely to be true, and would essentially be reputation evidence, which is impermissible. "[E]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a); Fed. R. Evid. 405(a); *United States v. Inniss*, 2019 U.S. Dist. LEXIS 221119 *25 (EDNY 2019). FRE 405 makes clear that reputation evidence is generally inadmissible except in certain circumstances not present in the case at bar. Its likely prejudicial effect on the jury would also disqualify it under FRE 403.

### 4. *Anonymous letter's inadmissibility*

The anonymous letter is textbook hearsay, unsigned, unsworn and serves no purpose but to emotionally enflame the jury, which is exactly what it did in the first trial of this matter. Plaintiff erroneously argues that Defendants raised no objections to the anonymous letter at the first trial. This is untrue. The parties' proposed, joint pre-trial order at page 7 says in relevant part "…parties reserve the right to make additional objections[.] See Docket # 154.

Defendants vehemently and repeatedly objected to its use at both trials. As discussed by the Court at the 1/26/2023 pre-trial conference, Plaintiff also failed to list properly its exhibit in the proposed, joint pre-trial order, and instead listed bates stamped page ranges only, many of which encompassed more than one proposed trial exhibit. Plaintiff's exhibit list also failed to identify the number of pages per exhibit, the correct bate stamp numbers, the date of the documents and any descriptions of the documents. It should be noted that Plaintiff has now failed to properly present this on both proposed, joint pre-trial orders to date. As a result, Defendants did not receive adequate notice of Plaintiff's proposed exhibits.

Admitting the anonymous letter would be highly prejudicial to Defendants, given that they are unable to cross-examine an anonymous letter, or its unknown author. The mere fact that it is anonymous alone indicates that its reliability should be questioned. And, it does not satisfy any hearsay exception.

Most importantly, since Defendants acknowledged receipt of the anonymous letter, there was no reason to admit it for the limited purpose of notice of the allegations contained therein. Especially since Plaintiff's counsel inquired of Defendants at trial as to the response to the anonymous letter. The fact that the anonymous letter was admitted for a limited purpose at the previous trial but then misused by Plaintiff, in Defendants' view, is one reason a new trial was required. Its admission would be redundant and likely confuse and/or enflame the jury, contrary to FRE 403. The Plaintiff had years to determine who wrote the anonymous letter and call that person to testify at trial. It apparently chose not to do so. The Court should not relieve Plaintiff of the consequences of its litigation strategy decisions.

Finally, any error made by the Court regarding the evidentiary items Plaintiff claims, constitutes harmless error, which is not a basis for reversal or a new trial. District court judges

have "wide latitude in determining whether evidence is admissible at trial." *Warren v. Pataki*. 823 F.3d 125. 138 (2d Cir. 2016) (citation and internal quotation marks omitted). A District Court's determination to exclude evidence "'will not be overturned unless it is arbitrary or irrational.'" C.C. *by & through Camarata v. Polaris Indus., Inc* .774 F. App'x 45. 47 (2d Cir. 2019) (quoting *United States v. Amuso*. 21 F.3d 1251. 1263 (2d Cir. 1994)). Plaintiff has made no such showing here, although it bears the burden.

### B. <u>THE NOMINAL DAMAGES AWARD IS SUPPORTED BY THE EVIDENCE</u>

Next, Plaintiff argues that the jury's nominal damages award is against the weight of the evidence. PMOL at 7.  At no time during trial did Plaintiff object to the jury's nominal damages award, any alleged compromise verdict nor jury instruction.  As such, Plaintiff has waived those arguments or objections.  Nominal damages are a form of relief; they do not constitute a separate cause of action. See BLACK'S LAW DICTIONARY 392 (6th ed. 1990) (defining nominal damages as a "trifling sum awarded to a plaintiff in an action where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of [plaintiff's] rights or a breach of the defendant's duty, or in cases where, although there has been a real injury, the plaintiff's evidence fails **[*16]** to show its amount").

Here, Plaintiff argues that it set forth proof of emotional distress at trial. PMOL at 8. Plaintiff also claims its proof of emotional distress was clear and substantial. Id.  Obviously, it was the jury's province to evaluate Plaintiff's proof on this point, and all others.  The jury was free to decide that Plaintiff suffered minimal or no injury and chose to award only nominal damages based on Plaintiff's proofs.  That decision was the jury's prerogative, and its conclusion should not be disturbed.  In fact, a jury's exercise of discretion is one of the pillars of our legal system, and should be overturned with great caution.

"If new trials were required whenever a possibility exists that jurors with conflicting views had compromised, trial would become a hopeless and ineffectual way to settle disputes." *Aczel v. Labonia*, 584 F.3d 52, 60 (2d Cir. 2009). Courts, "should not grant a new trial in circumstances where, 'while a compromise may have occurred, there is an equally reasonable and perhaps even better explanation [of the jury's verdict] which involves no jury misconduct.'" *In re Vivendi Universal*, 765 F. Supp. 2d at 574 (quoting *Ajax*, 569 F.2d at 184); see also *Lewis v. City of New York*, 689 F. Supp. 2d 417, 426 (E.D.N.Y. 2010) (same).

Here, the record supports the award of nominal damages. For example, Plaintiff's trial testimony was inconsistent and contradictory regarding details including what body parts were allegedly touched and when. See Tr. Tx. at 211:5-23; 219:5-20; 220:16-25; 221:1-23; 223:22-25; 225:21-25; 231:1-25; 232:1-25; 233:1-7. She repeatedly contradicted her prior sworn testimony to the U.S. Equal Employment Opportunity Commission ("EEOC"), in her deposition and the Court in the first trial. Id. Plaintiff's testimony also focused on grievances that were legitimate employer discipline. Id. Plaintiff could not identify with specificity the dates, locations or alleged conduct that constituted the sexual harassment. See Tr. Tx. at 211:5-23; 281:21-25; 282:284:6-25; 285:1-22.

Plaintiff's testimony on emotional distress was also incredible. Id. The absence of medical records and expert testimony likely caused the jury to place minimal value on Plaintiff's alleged emotional distress. The only evidence on causation of Plaintiff's alleged emotional distress was Plaintiff's assumption. The mere fact that Plaintiff disagrees with the jury's conclusions is no reason for a new trial. Courts are not free to set aside a jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are

more reasonable. An inadequate damages award standing alone, from Plaintiff's perspective, does not indicate a compromise among jurors.

Plaintiff further claims that "Plaintiff submits that the Court's instruction regarding nominal damages may have caused confusion among the jury." PMOL at 7. However, Plaintiff waived this argument by failing to object to the instruction at the time the Court read the charge, or after. It is improper to raise that argument for the first time in a post-trial motion. Even if it were proper, it is completely speculative and without supporting proofs – note Plaintiff says "may have". Plaintiff offers no proof in support thereof. As a result, the jury's nominal damages award in this case is supported by the weight of the evidence.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's post-trial motion in its entirety. The Plaintiff has not met its burden to show that significant evidentiary issues require a new trial nor that the jury's award of nominal damages is against the weight of the evidence. Plaintiff has failed to demonstrate that the jury reached a seriously erroneous result or . . . the verdict was a miscarriage of justice.

Dated: Brooklyn, New York
April 7, 2023


        /s/
LAW OFFICE OF DAVID WIMS
David C. Wims, Esq. (DW-6964)
*Attorneys for Defendants*
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550